Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
 2                  NORTHERN DISTRICT OF OHIO
 3                       EASTERN DIVISION
 4
                  ~~~~~~~~~~~~~~~~~~~~
 5
 6     OUTDOOR PRODUCT INNOVATIONS,
       INC.,
 7
 8             Plaintiff,
 9
               vs.              Case No. 1:18-CV-02457
10
11     JEST TEXTILES, INC., et al.,
12
               Defendants.
13
14                ~~~~~~~~~~~~~~~~~~~~
15
                     Deposition of
16                 DANIEL B. REASER
17
                     June 19, 2019
18                    10:05 a.m.
19                    Taken at:
20     Singerman, Mills, Desberg & Kauntz Co., L.P.A.
21              3333 Richmond Road, Suite 370
22                  Beachwood, Ohio
23
24
25           Renee L. Pellegrino, RPR, CLR
```

**EXHIBIT**
tabbies
3

Page 182

1          identification.)
2          - - - - -
3     Q.     Showing you what's been marked as
4  Defendants' Exhibit 21, these are credit card
5  authorizations of payments to Jest.  Is that
6  your signature or Mr. Levis'?
7     A.     Mine.
8     Q.     Are you the only one that can sign
9  on the credit card?
10    A.     Yes.
11    Q.     Is it a company credit card?
12    A.     Yes.
13    Q.     Do you know the date of these?
14    A.     What do you mean?
15    Q.     The date of the charge.
16    A.     Not without looking at the records.
17    Q.     Is that something you guys would
18 have, maybe like the credit card statements?
19    A.     These are -- I'm sure Mr. Levis has
20 got something to tie these to.
21    Q.     Because that was going to be my
22 primary question, which is whose signature is
23 that and do we know the date of the charges?
24    A.     He can provide that for you.
25    Q.     It's your signature but you can't

Page 183

1  tell, like I can't tell, the date.
2     A.     I don't see the date on here.
3     Q.     Me neither.  You can put that down.
4          - - - - -
5          (Thereupon, Defendants' Exhibit 22,
6          E-Mail from Dan Reaser to Kerry
7          Forsdahl, Maryann Vinci and James
8          Levis dated September 10, 2018, was
9          marked for purposes of
10         identification.)
11         - - - - -
12    Q.     Exhibit 22, this is an e-mail from
13 you to Kerry and Maryann and Jim, correct?
14    A.     Yes.
15    Q.     Dated September 10th of '18?
16    A.     Yes.
17    Q.     And it says, "Since the bank won't
18 release as much money as you want, how about we
19 make arrangements to accept American Express
20 credit card number.  That would solve the
21 problem."
22         Do you see that?
23    A.     Yes.
24    Q.     What bank won't release what?
25    A.     The bank of Dan.

Page 184

1     Q.     So you referred to yourself in the
2  third person calling yourself a bank to Kerry
3  and lied and said that the bank wouldn't release
4  money?
5     A.     I didn't lie and I wouldn't say that
6  and I would say we were protecting our interests
7  because she proved to be a liar over and over
8  again with telling us things that weren't true,
9  and when we verified, we found out she was lying
10 to us, and, therefore, we had to protect our
11 interests and this was a way to be able to get
12 charges and do back-charges when she didn't
13 deliver.
14    Q.     So we'll go through it -- I hear
15 what you're saying.  We'll go through it
16 component by component.
17         You reference a bank.  There is no
18 bank?
19    A.     I'm the bank.
20    Q.     I understand you're referring to
21 yourself now in a lawsuit as the bank.
22    A.     You can look up a definition of the
23 bank.  I'm the bank.
24    Q.     There is no bank involved, correct?
25    A.     There's no third-party bank; is that

Page 185

1  what you're trying to ask me?  I'm not going to
2  help you, but I am the bank.
3     Q.     Again, you're now declaring yourself
4  a bank?
5     A.     In this particular project I was the
6  bank, I was the money.
7     Q.     Are you federally insured and
8  regulated by the federal government?
9     A.     I'm more than that.  I'm going to
10 make sure we get what we're supposed to get
11 before it gets paid for.
12    Q.     If we're going to be cute --
13    A.     We're not going to be cute, but
14 you're sitting there making a smartass comment
15 about me being -- calling myself in the third
16 person.  I was the bank, I financed this
17 project, and the requirements under here were
18 that we wanted to use American Express because
19 we did not trust what she had not delivered up
20 to this point --
21    Q.     I --
22    A.     And I'm still talking, okay?  And I
23 was going to protect our company any way we
24 could, and the way to do it was through the
25 American Express card.  That's the summation of

47 (Pages 182 - 185)