IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| OUTDOOR PRODUCT INNOVATIONS, INC. | ) | CASE NO. 1:18-CV-02457-PAG |
| | ) | |
| | ) | JUDGE PATRICIA A. GAUGHAN |
| Plaintiff, | ) | |
| | ) | **PLAINTIFF'S MEMORANDUM IN** |
| v. | ) | **OPPOSITION TO DEFENDANT'S** |
| | ) | **MOTION FOR LEAVE TO** |
| JEST TEXTILES, INC., | ) | **SUPPLEMENT COUNTERCLAIM** |
| | ) | *INSTANTER* |
| Defendants. | ) | |

I. INTRODUCTION AND STATEMENT OF THE CASE

This is a breach of contract case. The plaintiff, Outdoor Product Innovations, Inc. ("OPI"), asserts that the defendant, Jest Textiles, Inc. ("Jest"), breached a total of 17 issued and confirmed purchase orders and that it breached the parties' non-disclosure and non-compete agreement. *See* Amended Compl. (Doc. 18). In short, OPI brought suit based on Jest's repeated and habitual failure to deliver timely and undamaged proprietary, exclusively licensed products which are the subject of confirmed purchase orders. *See* Amended Compl. (Doc. 18), ¶s 41-47. In fact, before filing suit, OPI had already overpaid Jest in the amount of $781,402.24 for goods made but not delivered. *Id.* ¶ 37.

For its part, Jest answered the Amended Complaint and has filed a Counterclaim against OPI in which it attempts to set forth the following causes of action: breach of contract (count one); a statement on an account (count two); fraudulent misrepresentation (count three); and declaratory relief seeking authority to sell[1] the goods under Article II of the Uniform Commercial Code. *See* Answer and Counterclaim (Doc. 20). In answer to the counterclaim, OPI denies that it is in breach

---

[1] Defendant Jest's motion to sell the good was denied by this Court. See Doc. # 23. This issue is now moot as OPI has subsequently acquired possession of the non-delivered goods.

1

of the purchase orders, that there is due any money owed to Jest on an account, that it has made any fraudulent misrepresentations with respect to its ability to pay for the goods (OPI's refusal to pay additional amounts before filing suit was based on the fact that it has already overpaid Jest), or that Jest is entitled to sell the goods.  *See* Answer to Counterclaim (Doc. 29).

Jest now seeks leave of this Court to file a supplemental counterclaim based on alleged information uncovered in discovery and events that have transpired during the pendency of this lawsuit.  *See* Motion for Leave, page 2 (Doc. 78).  First, Jest claims that it has since learned that OPI is now doing business in China and that, as a result, OPI is in breach of the parties' Mutual Non-Disclosure and Non-Compete Agreement.  Second, Jest claims that, due to Plaintiff's non-payment, Jest is now being assessed with duty charges from the United States Department of Customs and Border Control and VAT (value added tax) by and through its affiliates in China.  Finally, Jest claims that "we learned that Plaintiff mispresented its ability to pay for these orders," that Dan Reaser was funding OPI's purchases, and that Plaintiff continued to ship product without payment.

Each of Defendant's supplemental allegations are meritless and Jest's Motion to Supplement should be denied.

## II. LAW AND ARGUMENT

### A. Standard of Review

Whether to grant or deny a request to supplement a pleading is left to the sound discretion of the trial court.  *Burse v. Robinson,* No. 2:14-cv-403, 2015 WL 2337781, *2 (S.D. Ohio May 13, 2015) (King, M.J.) (citations omitted).  In exercising its discretion under Rule 15(d), the Court considers "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to

cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment." *Id.*

A proposed amendment is futile if it could not withstand a Rule 12(b)(6) motion to dismiss. *Rose v. Hartford Underwriters Ins. Co.,* 203 F.3d 417, 420 (6th Cir. 2000). As a result, leave to supplement under Rule 15(d) is properly denied if supplementing the complaint would be futile. *See Spies v. Voinovich*, 48 F. App'x 520, 527 (6th Cir. 2002) ("[T]he same standard of review and rationale apply" for motions to amend under 15(a) and motions to supplement under Rule 15(d).).

### A. Jest's Proposed Supplemental Pleading Cannot Withstand a Rule 12(b)(6) Motion to Dismiss and is therefore futile.

Like any complaint, defendant's proposed supplemental counterclaim must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. 678. "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano,* 648 F.3d 365, 369 (6th Cir.2011) (quoting *Iqbal,* 556 U.S. at 677). On a motion brought under Rule 12(b)(6), the court's inquiry is limited to the content of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *See Bassett v. Nat'l Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir. 2008)*; Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).

### i. The Supplemental Counterclaim fails to State a Claim for Breach of the NDA or Non-Compete Agreement.

Defendant alleges that "Plaintiff has been disclosing Jest's confidential and proprietary information to third parties. Moreover, Plaintiff is doing business directly with Jest's suppliers/manufacturers in direct violation of this [the Mutual Non-Disclosure Agreement and Non-Compete] Agreement [hereinafter, the "NDA/Non-Compete"). No written confidentiality was obtained from these third parties and no copy of such agreement was ever provided to Jest. Finally, Plaintiff ignored Jest's right of first refusal/match and Jest was never offered any additional orders or projects first as required by the Agreement."

Jest fails to plead any factual content that allows this Court to draw the reasonable inference that the OPI is liable for any breach of the Non-Disclosure provisions of the NDA/Non-Compete. That failure to plead any factual content is not surprising given that Kerry Forsdahl, one of Jest's corporate representative testified:

> Q. Does Jest intend on honoring the confidentiality, mutual nondisclosure agreement and the noncompete agreement?
>
> A. To be honest, I have no idea how this goes because once somebody's suing you, I don't really know whether you are required to continue for how long? There's no date. There's no anything, so I really don't know what's to be expected.

Forsdahl Dep. 148-149.[2]

To be more specific in pointing out the failures in Jest's Motion, first, Jest fails to identify what confidential and proprietary information has been disclosed by OPI and to which third parties' disclosure has been made. Mere conclusory allegations are insufficient to state a claim for beach of the NDA. While legal conclusions can provide the framework for a complaint, all claims

---

[2] Ms. Forsdahl's deposition transcript was designated as confidential under the terms of the Court's protective order. Accordingly, this transcript will be filed separately and under seal.

must be supported by factual allegations. *McKinney v. Bayer Corp.*, 744 F.Supp.2d 733, 741 (2010). The Supreme Court has indicated that " [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949; *see also Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, (2007) ("[A] formulaic recitation of the elements of a cause of action" is insufficient).

Courts in the Sixth Circuit regularly hold that such barebones allegations fail to set forth a plausible claim that a defendant breached a contract. *See, e.g.*, *Alshaibani v. Litton Loan Servicing, LP*, 528 F. App'x 462, 465 (6th Cir. 2013) ("Plaintiffs' naked allegation that Litton 'breached the terms of the Mortgage by, including but not limited to, failing to apply Plaintiff's [p]ayments in accordance with the terms of the [m]ortgage,' is simply a legal conclusion ***couched as a factual allegation***. As a practical matter, Plaintiffs' factually unadorned allegation that Litton misapplied their payments does no more to render their claim plausible than would a simple legal conclusion that Litton breached the mortgage.") (emphasis added); *Gombita v. Nationstar Mortg., LLC*, No. 1:16-CV-1024, 2017 U.S. Dist. LEXIS 11099, at *6 (N.D. Ohio Jan. 25, 2017) ("Plaintiffs' claim for breach of contract does not include any factual statements identifying which conditions or provisions of the agreement Defendant allegedly breached. Neither does it explain how Defendant breached the agreement."); *Anderson v. Bank of Am., N.A.*, No. 13-12834, 2013 U.S. Dist. LEXIS 152765, at *11 (E.D. Mich. Oct. 24, 2013) ("The complaint simply states that 'Defendants, by their conduct as described herein, have breached these requirements of the contract, by failing to credit Plaintiff for payments made, and by foreclosing instead of cleaning up their own mistake.' As Defendant correctly notes, Plaintiff 'fails to state what payments were made, when or how they were supposed to be credited, what mistakes were made, why they are considered mistakes under

the contract, etc.'  Therefore, under *Iqbal* and *Twombly*, Plaintiff has failed to state a breach of contract claim upon which relief can be granted.").

Second, Jest fails to identify which suppliers/manufacturers it alleges OPI is doing business with and that those suppliers/manufacturers were confidential and proprietary to Jest.  Jest fails to so specifically allege because it knows that in 2019 OPI is doing business with a factory known as Nine Bulls and that OPI brought Nine Bulls[3] to Jest's attention.  Specifically, Kerry Forsdahl, Jest's corporate representative, testified that it was Mick Maynard who brought Nine Bulls to Jest's attention.  Forsdahl Dep. 102.

The NDA provides that "'Confidential Information' does not include any information which is in the public domain prior to being disclosed by the Disclosure or learned or discovered by the Recipient, or enters the public domain after such disclosure, learning, or discovery through no actor fault of Recipient."  Jest fails to allege that information about Nine Bulls was not in the public domain.

Third, Jest fails to explain how the alleged failure to obtain "written confidentiality" from "these third parties" or that "no copy of such agreement was ever provided to Jest" somehow breaches the NDA.  It simply does not.

Fourth, Jest presumes that a third-party like Nine Bulls would consent to doing future business with Jest after Jest failed to pay them for product produced in 2018.  *See* Forsdahl Dep. 116 & 175.  Indeed, one of Nine Bulls representatives confirmed that Jest failed to pay it for a

---

[3] Nine Bulls has stated its position that "as an independent company, we never promise to cooperate with a single company.  We have many partners and cooperate with different types of products.  We had talked to Rhino in fall of 2017 about building blinds, before conversations with Jest."  See copy of email attached hereto as Exhibit A.

portion of the Rhino Blinds product delivered in 2018 by Nine Bulls to Jest. (Ex. B, Declaration of Bao Teng ¶ 7).

Lastly, Jest's allegation that "Plaintiff ignored Jest's right of first refusal/match and Jest was never offered any additional orders or projects first as required by the Agreement" is undermined and is rendered futile in light of its failure to allege that it would have accepted additional orders or would have been able to fulfill additional orders including "matching pricing and production ship dates prior to orders being released to any other manufacturer."  This allegation is missing due to the fact that Jest also alleges that OPI is already in breach of the purchase orders and has engaged in a fraud against it.  Thus, it would be futile to allege that a party which is the victim of an alleged fraud would accept additional orders.  It should also be noted that in its Complaint, OPI has cited to numerous material breaches of the contract by Jest which justifies never doing business with Jest in the future.

Further, Jest has testified that the delivery dates in the purchase orders were "inconsequential."  *See* Forsdahl Dep. 44. Not only were the delivery dates set forth on the purchase orders accepted by Jest, the same delivery dates were set forth on the pro forma invoices prepared by Jest and submitted to OPI to accept the purchase orders.  The terms of the OPI Purchase Orders clearly stressed the importance of meeting contractual delivery dates and the conduct of OPI throughout the year 2018 was consistent with that position.

It is futile for Jest to allege that it could have match price and production ship dates when it has completely and utterly missed delivery dates on the purchase orders which are the subject of this litigation and further has insisted that delivery dates were "superfluous." Forsdahl Dep. 123.

Further, Jest has failed to allege anywhere in its Supplemental Counterclaim that it fulfilled the purchase orders which are the subject of these transactions (and the subject of its counterclaim)

7

on time and that it had met the delivery dates which it had previously agreed to. Absent these critical allegations, it is entirely futile to allow Jest to supplement its Counterclaim as requested.

### ii. The Supplemental Counterclaim fails to State a Claim for Duties or VAT.

Defendant Jest alleges that "Plaintiff has breached the CIF terms of the parties' agreement causing Jest to incur hundreds of thousands of dollars in duty assessments by the U.S. government and to incur VAT taxes by and through affiliates in China." Jest attaches signed purchase orders as Exhibit 1 to Count I of the Counterclaim. Jest does not allege in its Supplemental Counterclaim, nor can it allege in its Supplemental Counterclaim, that it has fulfilled the terms and conditions set forth in each purchase order. Moreover, the CIF terms of the parties' agreement on their face do not permit or allow Jest to recover any money as a result of any duties assessed by the U.S. government or to permit recover for VAT taxes incurred by and through affiliates in China.

Even a cursory examination of the purchase orders attached to the Supplemental Counterclaim reveals that the "Vendor" or "Supplier" is Jest Textiles, with an address located at 13 Mountainside Avenue, Manwah, New Jersey. The purchaser is Outdoor Product Innovations, Inc., and the products are to be shipped to Purchaser at its address located at 177 Reaser Court, Elyria, Ohio. Each purchase order sets forth the item ordered by model number, a description, quantity, rate and amount. Each purchase order also states the required delivery date and the commercial term: CIF Cleveland, Ohio.

Further, each purchase order states that the "Purchase Order is subject to general terms and conditions on the reverse side." On the reverse side of each purchase order, there are terms and conditions, including the following:

> The Supplier must make available by the Delivery Date (due date) specified in the Purchase Order all supporting delivery documentation.

> The Supplier must take all reasonable steps to minimize or prevent any delay in the performance of the Services or the delivery of the Goods.
>
> Unless otherwise specified, the Purchase Order will be governed and construed in accordance with the laws in place in the State of Ohio in which the Purchase Order is issued. The Purchaser and the Supplier submit to the non-exclusive jurisdiction of the court of the said State or Territory.

Kerry Forsdahl testified that when she received the purchase orders, she recalls the terms and conditions attached, read through them, and did not object. *See* Forsdahl Dep. 49-50.

There is simply no support for the proposition that OPI is responsible for any duties paid by Jest or any VAT paid by its affiliates. First, Jest fails to allege, and, in fact, it knows it cannot allege, that it delivered the goods ordered in each purchase order on the date required by each purchase order. Jest simply failed to deliver the goods on the date specified. In fact, Jest has testified that the delivery dates were superfluous.

Second, the commercial term "CIF Cleveland," **under Ohio law**, does not permit seller to recover duties or VAT. Section 1302.33 of the Ohio Revised Code states:

> (A) The term C.I.F. means the price includes in a lump sum the cost of the goods and the insurance and freight to the named destination. The term C. & F. or C.F. means that the price so includes cost and freight to the named destination.

"R.C. 1302.33 defines applicable requirements for this C. & F. contract: '. . . C. & F. or its equivalent has the same effect and imposes upon the seller the same obligations and risks as a C.I.F. term except the obligation as to insurance.'" *Paramount Supply Co. v. Sherlin Corp.*, 16 Ohio App.3d 176, 183, 475 N.E.2d 197 (8th Dist.1984). Section 1302.33 states that the price includes the cost of the goods, insurance, and the freight to the named destination in a "lump sum." R.C. 1302.33. It also requires the seller to obtain a receipt from the carrier (i.e., a bill of lading) showing that the freight has been "paid or provided for . . . ." *Id.* In *Amco Transworld, Inc. v. M/V Bambi*, 257 F.Supp. 215, 218 (S.D.Tex.1966) (interpreting Texas UCC), the court stated that

9

a "c. & f. contract permits either the seller to prepay the freight or the purchaser to deduct the actual freight charges from the purchase price." Either way, the Seller ultimately bears the freight charges. The price paid by the buyer "includes cost and the freight to a specified destination." *Id. See also, Capitol Cake Co. v Lloyd's Underwriters*, 453 F.Supp 1156, (D.Md 1978), fn. 1, (applying Maryland UCC). Further, the *Amco* court stated "the seller fulfills his duty by delivery of the goods to a carrier and the prepayment of the freight charges." *Amco*, 257 F.Supp. at 218. *See also*, *Paramount Supply Co.*, 16 Ohio App.3d at 183 ("Paramount was obliged to deliver the goods on board the ship, absent an oral modification of the contract or Sherlin's waiver of the C. & F. shipment term.").

Since the price paid by the Plaintiff (buyer) "includes cost and the freight to a specified destination," *Amco*, 257 F.Supp. at 218, and since the Defendant (seller) ultimately bears the C.I.F. cost to deliver the goods to the Plaintiff, the Defendant is responsible for paying all costs, including duties and VAT, on the goods as a part of the cost to deliver the goods to the Plaintiff.

In fact, Kerry Forsdahl testified that she knew what the term CIF meant and that CIF Cleveland would be cost insurance freight to Cleveland on the seller (i.e., Jest). Forsdahl Dep. 185-186. And she likewise testified that:

> Q.· And under the way this arrangement was to work, Jest was doing all of these 11 items for the price set forth in the purchase orders as confirmed by the proforma invoices and once they get to the Cleveland port, that's when OPI makes arrangements to pick up the containers and deliver them to Elyria on their dime, correct?
>
> A.· Yes.

Forsdahl Dep. 101.

No duty is imposed or VAT paid on goods being purchased from a New Jersey company and shipped to an Ohio company. Duties might have been assessed to Jest as the consignee and

10

{01348389-1}

owner of the goods when imported into the United States after Jest manufactured those goods in China, and VAT may have been paid by "affiliates" of Jest, but there is simply nothing in the purchase orders (or any other contract entered into by and between OPI and Jest) that evidences any agreement that OPI would be responsible for duties or VAT.

While Jest claims that OPI "owes" it damages for China VAT on goods Jest had manufactured in China, the amount of that claim and the reasons behind the claim for VAT has never been substantiated. Kerry Forsdahl testified that she never sent OPI or any of her customers documentation of any transactions with any of Jest's Chinese manufacturers. Forsdahl Dep. 109-110; *see also id.* 210 ("It's none of their concern. I quoted you a price for a product. I'm delivering it. Here's the invoice. End of story."). Jest cannot logically argue that its business relations with vendors in China are irrelevant to OPI or any other customer of Jest, while contending that OPI should compensate Jest for issues that Jest created in China between itself and its China vendors.

The same illogic applies to Jest's claims for customs duties. Jest has maintained that it held title to the goods it imported at the time of importation and that it sold those same goods CIF, yet now wants to unilaterally "change the deal" in its favor. As the importer of record, Jest alone had legal standing to challenge the imposition of the customs duties, yet Kerry Forsdahl testified on page 206 that it failed to timely contest the determination of additional customs duties. For these reasons, it would be futile to allow Defendant to supplement its counterclaim.

### iii. The Counterclaim Fails to State a Claim for Relief for Fraud.

Jest's Supplemental Counterclaim alleges that "during these proceedings we learned that representatives from Plaintiff fraudulently misrepresented/concealed that his bank would not release funds to Jest, inducing Jest to ship more product and become further in debt. These statements were knowingly false, as no bank was involved and Plaintiff said it was 'the bank of

Dan' meaning Plaintiff was refusing to pay, not a bank with some institutional controls. Plaintiff's representative and officer James Levis, now admits that no bank was involved. Plaintiff's president fraudulently misrepresented these facts to Jest, lied about a bank refusing payment, which caused Jest to ship more product that was never paid for." This nonsensical allegation simply does not support a claim for fraud.

First, it makes no sense and it is entirely illogical that Jest would reasonably ship more product to OPI based on a representation that a bank would not release funds to Jest. Second, the source of OPI's funding is irrelevant. If a bank was involved and Jest knew the bank was not going to release funds, why would Jest release additional product and where did it expect the money would come from? The purchase orders which are the subject of Jest's claim for breach of contract (count one) and action for an account and account stated (count two) were issued by OPI, so any liability for failing to pay for the goods shipped by Jest would rest with OPI.

"[I]n Ohio, a breach of contract does not create a tort claim." *Telxon Corp. v. Smart Media of Del., Inc.*, 2005-Ohio-4931, ¶ 34 (Ct. App.) (collecting authority).."A tort claim based upon the same actions [as] those upon which a claim of contract breach is based will exist independently of the contract action only if the breaching party also breaches a duty owed separately from that created by the contract, that is, a duty owed even if no contract existed." *Textron*, 115 Ohio App.3d at 151. To hold otherwise would be to convert every unfulfilled contractual promise, i.e., every alleged breach of a contract, into a tort claim. See *id.*; see, also, *Raze International, Inc. v. Southeastern Equipment Co.*, 2016-Ohio-5700, 69 N.E.3d 1274 (App. 7 Dist. 2016); *Lucarell v. Nationwide*, 7th Dist. No. 13 MA 133, 2015-Ohio-5286, ¶ 87, 44 N.E.3d 319.

Dismissal is warranted when plaintiff has alleged no damages attributable to defendant's alleged fraud that are different than the damages attributable to the alleged breach of contract. *See*

12

{01348389-1}

*NZR Retail of Toledo, Inc. v. Beck Suppliers, Inc.*, 2016-Ohio-3205, L-15-1179; *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.,* 115 Ohio App.3d 137, 151, (9th Dist.1996) ("[A]n action arising out of contract which is also based upon tortious conduct must include actual damages attributable to the wrongful acts of the alleged tortfeasor which are *in addition* to those attributable to the breach of contract." (Emphasis sic.)).

In *Wolfe v. Continental Casualty Co.*, 647 F.2d 705, 710 (6th Cir.1981), the 6th Circuit stated this general rule:

> "Battista also relied on the Ohio authority that a breach of contract does not create a tort claim. The still valid rule of *Ketcham v. Miller*, 104 Ohio St. 372, 136 N.E. 145 (1922), **forbids parties to convert contract actions into tort actions by attacking the motives of a breaching party**, as the motive of a breaching party is irrelevant to a contract action. To apply the bad faith standard to a duty implied from the contract would controvert this policy by making the motive of the breaching party the dispositive factor. Moreover, the availability of a tort claim makes it fair to assume that a contract action should not be available; under Ohio **law the existence of a contract action generally excludes the opportunity to present the same case as a tort claim**.

Ohio law goes further by requiring that fraud damages be limited to the injury actually arising from the fraud. The tort injury must be unique and separate from any injury resulting from a breach of contract." *Med. Billing, Inc. v. Med. Mgt. Sciences, Inc*., 212 F.3d 332, 338 (6th Cir.2000) (emphasis added). "When a fraud-based claim is simultaneously asserted with a breach of contract claim, a court should look to the existence of the following in determining whether the fraud-based claim is precluded: (1) a legal duty separate from the duty to perform under the contract; (2) a fraudulent misrepresentation collateral or extraneous to the contract; and (3) damages caused by the misrepresentation and unrecoverable as contract damages." *In re Natl. Century Fin. Ents.*, 846 F.Supp.2d 828, 857 (S.D.Ohio 2012).

13

{01348389-1}

Jest's attempt to convert a breach of contract claim into a tort or fraud claim is without merit.  There is no duty independent of the purchase orders to pay for the products delivered.  There is no fraud.

### B. Defendant's undue delay, bad faith and dilatory motive bars a supplemental counterclaim.

Jest has engaged in undue delay, bad faith and other dilatory motives in seeking to supplement its counterclaim.  Jest has waited until well after the date established by this Court's initial case management order to seek leave of court to supplement its pleadings.  Jest has waited until after Plaintiff has taken, but not yet completed, the deposition of its corporate representatives.  Jest has produced Kerry Forsdahl and Maryann Vinci as corporate representatives pursuant to OPI's Rule 30(b)(6) notice. *See* (Ex. B, 30(b)(6) Notice to Jest).  Ms. Forsdahl was unable to answer questions about Jest's alleged damages and she deferred numerous subjects of the 30(b)(6) notice to Doug Graves, her fellow shareholder, officer and director of Jest (*see* Forsdahl Dep. 10-11), but so far Jest has refused to produce Doug Graves for a deposition.  Jest claims Mr. Graves resides in China and basically states, "good luck getting his deposition, we are not bringing him to the states."  But Jest has an obligation to produce and prepare a corporate representative to testify on Jest's behalf in response to the 30(b)(6) notice.  *See Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1146 (10th Cir. 2007) ("The law is well-settled that corporations have an "affirmative duty" to make available as many persons as necessary to give "complete, knowledgeable, and binding answers" on the corporation's behalf.") (cleaned up).  Its failure to produce such a witness is sanctionable, with sanctions "ranging from the imposition of costs to preclusion of testimony and even entry of default." *QBE Ins. Corp. v. Jorda Enters.*, 277 F.R.D. 676, 690 (S.D. Fla. 2012) (collecting cases).  Jest should not be rewarded with its failure to

14

cooperate with discovery while being allowed to supplement its counterclaim to specifically include matters which are known exclusively to Mr. Graves.

### C. There would result in undue prejudice to the opposing party by virtue of allowance of the amendment

In addition to its undue delay, bad faith and other dilatory motives, there would result undue prejudice to OPI by virtue of the allowance to the supplemental counterclaim. As stated above, Jest has so far refused to allow Mr. Graves to be deposed (or prepared any corporate representative) on the matters which it is now seeking leave to supplement its counterclaim. It would be highly prejudicial to allow Jest to supplement its counterclaim while permitting Jest to engage in "hide the ball" discovery practices.

### III. CONCLUSION

For the foregoing reasons, Jest's Motion for Leave to Supplement Counterclaim should be denied.

Dated: August 8, 2019

Respectfully submitted,

*/s/ David M. Cuppage*
David M. Cuppage (0047104)
E. Roger Stewart (0069042)
Nicholas R. Oleski (0095808)
MCCARTHY, LEBIT, CRYSTAL
 & LIFFMAN CO., LPA
101 West Prospect Avenue
1800 Midland Building
Cleveland, Ohio 44115
(216) 696-1422 – Telephone
(216) 696-1210 – Facsimile
dmc@mccarthylebit.com
ers@mccarthylebit.com
nro@mccarthylebit.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2019, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ David M. Cuppage*
David M. Cuppage (0047104)

{01348389-1}