IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| OUTDOOR PRODUCT INNOVATIONS, INC. | ) | CASE NO. 1:18-CV-02457 |
| | ) | |
| | ) | JUDGE GAUGHAN |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JEST TEXTILES, INC., ET AL. | ) | |
| | ) | |
| Defendants. | | |

_____

DEFENDANT'S BRIEF IN OPPOSITION
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

_____

Defendant Jest Textiles, Inc. ("Jest" or "Seller"), by and through its undersigned counsel, hereby files its Brief in Opposition to Plaintiff's Motion for Summary Judgment in the above-captioned matter.

I.  INTRODUCTION AND FACTS[1]

Jest has 40 years of experience in the fabric industry and has produced thousands of quality durable custom fabrics and custom clothing products. In late 2017, Jest entered into a contract with Outdoor Product Innovations, Inc. ("Plaintiff" or "Buyer") to sell 155,558 hunting blinds (i.e. a portable camouflaged hunting structure). *See* Affidavit of Kerry Forsdahl attached to MSJ as Exhibit "1."  The products were being made in China by Jest and then shipped from China to the United States.  During the early stages of the contract, Plaintiff sent its representatives and agents to China to visit the facilities, meet with Jest and understand the process.  *See* Affidavit of Douglas Graves attached to MSJ as Exhibit "19."

_____

[1] All Exhibits hereto are authenticated by the attached affidavits or in the parties' depositions.

1

Ultimately, Plaintiff issued signed C.I.F. purchase orders to Jest in the amount of $5,999,933.30.  These orders were all signed by Plaintiff's controller Samantha Hamilton. *See* MSJ Exhibit "1" and P.O.'s attached to MSJ as Exhibit "2."  The total amount of invoice billings increased to $6,204,269.35 during the project due to add-ons (this figure does not include VAT or duty damages). *See* MSJ Exhibit "1" and Accounts Receivable/Payable report attached to MSJ as Exhibit "3."  To date Plaintiff has only paid $5,705,527.31 to Jest.  **While Plaintiff claims it paid Jest $6,008,152.78 that is false – it allegedly paid a large portion of that money to third parties – not to Jest.** *See* BIO, compare pages 12 and 13.

The Plaintiff's signed P.O.s all stated that the sale and shipment terms were C.I.F (meaning cost, insurance and freight to ship from China).  The term "C.I.F." in a sale legally designates that Jest's obligations ends once the goods are delivered to the docks in China. *See* MSJ Exhibit "1."  Under such a sale, the buyer is responsible for all duty, taxes and charges of importing the goods into the United States. *Id.*  Contrary to Plaintiff's claims the purchase orders issued by Plaintiff contained no second page**.** *See* Depo Kerry Forsdahl p. 49.

The payment terms of the sale of the hunting blinds were 50% deposit and 50% CBS (i.e. Cash Before Shipping). *See* Invoices attached hereto as Exhibit "4."  Plaintiff was required to pay Jest a 50% deposit upon issuance of the order and 50% was due to Jest when the goods were delivered to the docks in China for shipment.  *See* Invoices attached to MSJ as Exhibit "4."  In its Motion, Plaintiff inaccurately claims that the payment terms were 10% / 90%, but that was caused by Plaintiff's failure to pay the deposits.  In either event, regardless of the allocation of percentages as deposit, Plaintiff was required to pay in full before the product left China.  In July 2018, Plaintiff stated that Jest will "Receive money only when containers hit the water and then 75% will be paid as we have already paid 25%." *See* Email attached hereto as Exhibit "2."

2

Plaintiff knew and agreed it had to pay in full before shipment. *See* Plaintiff's July 6, 2018 email

attached hereto as Exhibit "2."

The Jest invoices all state as follows:

1. **CLAIMS** - Goods must be counted upon receipt. Cutting ticket is not proof of shortage. All claims or demands for defective merchandise must be made in writing by certified mail within 10 days of receipt of goods and failure to give such notice shall constitute unqualified acceptance and waiver of all such claims by buyer. Written return authorization by seller is required for returns. Any errors in items or price must be reported within 10 days.

2. **TESTING OF GOODS** - It is the buyer's responsibility to test and sample the goods received before cutting to meet specific requirements and applications. Absolutely no returns will be accepted or allowances made after goods have been cut.

3. **CASUALTIES** - Goods delivered throughout common carriers or sent via parcel post are at the risk of buyer  In no event shall the seller be liable for loss of profits, late deliveries, damages for breach of contract by buyer, or other consequential or contingent losses.

4. **WARRANTIES** - Seller makes no warranty, either express or implied, of merchantability or of fitness of goods for any specific purpose unless expressly specified.

5. **PAYMENT** - Payments are due within time period specified on invoice. Upon failure of the buyer to make timely payments, buyer agrees to pay any and all costs of collection and suit, and attorney's fees and interest at the rate of 1.5% per month.

6. **ARBITRATION** - Any controversy or claim arising out of or relating to this contract, any interpretation thereof or breach thereof, shall be settled by arbitration in the City of Tenafly in accordance with the rules of the General Arbitration Council of the textile industry, a division of the American Arbitrary Association, and judgement upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

*See* MSJ Exhibit "4."  The invoices all state that "payments are due within the time period

specified on the invoice."  If payment is not made, Jest is contractually entitled to 18% interest

and all attorney's fees. *Id.*  Plaintiff repeatedly breached the parties' agreement and failed to pay

in full.  Plaintiff never paid the nearly $3 million deposit required. *See* MSJ Exhibit "1."  Equally

troubling is that when the goods were delivered to the docks in China, Plaintiff also failed to pay

the balance due and owing to Jest.  While Plaintiff claims it paid Jest in full those statements are

simply false, Plaintiff paid over $600,000.00 to Jest and third parties in the year 2019 alone.  The

payments in the year 2019 are direct evidence of Plaintiff's breach because Jest should have

already been paid in full no later than August of 2018.  In its Motion, Plaintiff admits that it

accepted all goods, no goods were rejected.

As will be shown herein below, Plaintiff's Motion for Summary Judgment should be denied.  Jest sold 155,558 hunting blinds to Plaintiff,  Plaintiff accepted all goods, but Plaintiff did not timely pay in full.  As shown herein below, Plaintiff's Motion for Summary Judgment should be denied.

II.    LAW AND ARGUMENT

   A.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

In reviewing a motion for summary judgment pursuant to Rule 56, this Court should only consider the narrow questions of whether there are "genuine issues as to any material fact and [whether] the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c). While the Court cannot resolve issues of fact, it is empowered to determine whether there are issues in dispute to be decided in a trial on the merits.  *See Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).  The crux of the motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251-52 (1986); *Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1310 (6th Cir. 1989).  A motion for summary judgment requires this Court to view "inferences to be drawn from the underlying facts . . . in the light most favorable to the party opposing the motion."  *Matsushita Electric Ind. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *Historic Preservation Guild v. Burnley*, 896 F.2d 985, 993 (6th Cir. 1989).  However, the party opposing summary judgment

4

has the burden to show that a "rational trier of fact [could] find for the non-moving party [or] that there is a 'genuine issue for trial.' " *Historic Preservation Guild*, 896 F.2d at 993 (quoting Matsushita). An issue is not "genuine" if it is not supported by evidence or is created by evidence that is "merely colorable" or "not significantly probative." *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. at 250. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. at 248. The Sixth Circuit has recognized and consistently emphasized that summary judgments should be granted where there are no material facts in dispute. *See Historic Preservation*, 896 F.2d at 993 (citing *Celotex Corp*., infra; *Anderson,* infra). Mere allegations and conclusory allegations are not sufficient to defeat summary judgment. *McDonald v. Union Camp Corp*. (6th Cir. 1990), 898 F.2d 1155, 1162; *Cloverdale Equipment Co*., 869 F.2d at 937. "The party with the burden of proof at trial is obligated to provide concrete evidence supporting its claims and establishing the existence of a genuine issue of fact." *Cloverdale Equipment Co*., 869 F.2d at 937. As will be shown herein, Plaintiff's motion for summary judgment should be denied and Jest's granted.

C.    PLAINTIFF'S CLAIM

Plaintiff's Motion for Summary Judgment is odd, Plaintiff seeks no damages, demands no goods and sets forth no claim. Plaintiff's sole surviving claim is for breach of contract based on timeliness, but no damages are sought. Generally, the elements for breach of contract action are (1) the contract, (2) the performance by the plaintiff of its obligations, (3) the breach by the defendant and (4) damages. *Lawrence v. Lorain Cty. Community College* (1998), 127 Ohio App.3d 546, 548-49. Plaintiff's claim for breach fails and its Motion for Summary Judgment should be denied because it is not claiming any damages and it cannot show that it fully performed (i.e. timely and full payment).

5

1.    PLAINTIFF SEEKS NO DAMAGES

A necessary element of a breach of contract action is damages, but here Plaintiff is literally claiming no damages. *See* Plaintiff's MSJ. While Plaintiff argues some shipments were untimely, it accepted all 155,558 hunting blinds and never rejected the shipments. Plaintiff testified that: "I agree that there is no undelivered product to the best of my knowledge…." *See* Depo. Levis, p. 56-58.  Plaintiff's acceptance of all the hunting blinds demonstrates both a lack of damages and (under the U.C.C.) negates any claim.  R.C. 1302.61 et seq.  The parties agree that Jest delivered and Plaintiff accepted 155,558 hunting blinds.  *See* Plaintiff's MSJ. Plaintiff claims no harm and seeks no damage.; thus, Plaintiff does not have a claim – only Jest has a claim.  It is for that very reason that Plaintiff spends the vast majority of its brief dealing with Jest's counterclaims - because it has no claim of its own. Plaintiff's  Motion should be denied, and its claims dismissed.

2.    PLAINTIFF ACCEPTED ALL GOODS

Plaintiff tries to cobble together a claim (with no damages) about the timing of delivery, but Plaintiff accepted all goods.  While Jest disputes any issue on the timing of delivery, if the orders were truly delivered late, then Plaintiff's remedy was to reject the order and seek cover goods.  R.C. 1302.65.  Plaintiff never rejected the goods, it admittedly accepted all the goods. *See* Depo, Levis; R.C. 1302.61, et seq.   That is the end of the issue. A buyer cannot accept the product and then refuse to pay for it.  **In fact, R.C. 1302.65 states that the "buyer must pay at the contract rate for any goods accepted."**   Thus, even assuming a timing issue, which is disputed, it creates no claim and no right to withhold payment.

In addressing "alleged" late deliveries, the Court held that where buyer accepted late delivery it was not entitled to accept performance and then simply refuse to pay the contract

6

price.  *Marley Cooling Tower Co. v. Caldwell Energy and Environmental, Inc.*, 280 F.Supp.2d 651; 51 UCC Rep.Serv.2d 376.   A party cannot accept goods, even if allegedly late, and not pay for the goods. *Id.*; R.C. 1302.65.  In this case, Plaintiff is seeking no damages and has accepted all goods; thus, Plaintiff has no claim and its motion should be denied.

### 3.  PLAINTIFF WAIVED ANY LOST SALES AND PROFITS

Plaintiff also waived and released any and all claims for lost sales or lost profits.  *See* Stipulation attached to MSJ as Exhibit "25."  Plaintiff entered into a formal stipulation, filed with the Court, waiving and releasing any and all claims for lost sales and lost profits.  Thus, any claim relating to lost sales due to the timing of delivery or late delivery has been forever waived of record.  Plaintiff's Motion for Summary Judgment should be denied.

### 4.  JEST'S INVOICES NEGATE ANY CLAIMS

Finally, Jest's invoice terms negate Plaintiff's alleged claim.  The invoices state that "[g]oods delivered through common carriers or sent via parcel post **are at the risk of buyer** in no event shall the seller be liable **for loss of profits, late deliveries, damages for breach of contract by buyer or other consequential or contingent losses**." *See* MSJ Exhibits "1", "4" and "19."  Once again, all shipments are at the risk of Plaintiff.  If product is late, it is exclusively at Plaintiff's risk and Jest is not liable for late deliveries.  All claims for damages for breach of contract or late delivery are waived by Plaintiff under these terms.  As set forth in Jest's Motion for Summary Judgment, the Courts hold that the risk of delivery lies solely with the buyer (like Plaintiff) on C.I.F shipments.  *Warner Bros. & Co. v. Israel*, 101 F.2d 59 (1939), *Fireman's Fund Ins. Companies v. M/V Vigsnes*, 1985 WL 6414 (N.D. Florida 1985).  The Second Circuit Court of Appeals in *Warner Bros. & Co. v. Israel*, 101 F.2d 59 (1939), held that the seller was not liable even if the product was not delivered at all.  The Court held that under

the "c.i.f. contract, **delivery of goods at point of destination is not a condition precedent to be performed at seller's risk for seller to become entitled to payment** of purchase price, nor is it made so merely because obligation to contract for carriage is expressed in form of delivery of goods at a designated place." *Warner*. Under C.I.F. terms, the buyer is obligated to pay regardless of whether the product is ever even received.

It is clear that Plaintiff's Motion for Summary Judgment should be denied.  It is seeking no damages; thus, a necessary element for breach of contract is missing.  Moreover, Plaintiff accepted all the goods and did not reject any alleged late delivery.  By Stipulation, Plaintiff waived any claim for lost sales or lost profits.  Jest's invoice terms show that Plaintiff waived any claim for late delivery or breach of contract.  Finally, as set forth below in the sections involving Jest's Counterclaim, Plaintiff cannot show performance itself (i.e. timely and full payment).  As a result, Plaintiff has no surviving claim and its Motion for Summary Judgment should be denied.

    D.    <u>JEST HAS VALID A COUNTERCLAIM FOR BREACH OF CONTRACT</u>

As an initial matter, Jest concurs that its declaratory judgment count is not at issue because the court allowed the sale of the stored goods to Plaintiff over Jest's objections during this lawsuit. *See* Docket entries 51 and 52.  Jest also agrees that a claim on account is a type of breach of contract that merges with breach of contract count for purposes of summary judgment.  Thus, this briefing will address Jest's claims for breach of contract and fraud.

    1.    <u>PLAINTIFF BREACHED BY ACCEPTING ALL GOODS WITHOUT PAYMENT</u>

In its Motion, Plaintiff spends the majority of its time addressing Jest's Counterclaims.  As will be shown herein, Plaintiff's Motion should be denied, and Jest's granted.  "The general

measure of damages in a contract action is the amount necessary to place the nonbreaching party in the position he or she would have been in had the breaching party fully performed under the contract." *Allied Erecting & Dismantling Co., Inc. v. Youngstown* (2002), 151 Ohio App.3d 16, 31-32, 783 N.E.2d 523; citing *F. Enterprises, Inc. v. Kentucky Fried Chicken Corp.* (1976), 47 Ohio St.2d 154, 159, 351 N.E.2d 121; *Nobs Chemical, U.S.A., Inc. v. Koppers Co., Inc.*, 616 F.2d 212 (1980). This Court held that, "[a] party in breach of a contract must pay all damages naturally flowing from the breach. These damages are not limited to the amount owed under the contract plus interest, but also include consequential as well as incidental damages." *Trebilcock v. Elinsky,* 2007 WL 1567710, (N.D. Ohio, 2007).  "Generally, a party injured by a breach of contract is entitled to ... expectation interest, or 'in having the benefit of his bargain by being put in as good a position as he would have been in had the contract been performed.'" *Anadarko E&P Company, LP v. Northwood Energy Corp.* 970 F. Supp.2d 764 (SD Ohio 2013); *Brads v. First Baptist Church of Germantown*,  89 Ohio App.3d 328 (1993);  Restatement of the Law 2d, Contracts (1981) 102–103, § 344; *Rasnick v. Tubbs*, 126 Ohio App.3d 431, 435, 437, 710 N.E.2d 750 (1998); Williston on Contracts. Sec 64.  The same holds true under a commercial U.C.C. sale, a party is always entitled to the "benefit of its bargain." *Trgo v. Chrysler Corp*., 34 F.Supp.2d 581 (1998); *See Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc*., 7 F.Supp.2d 954, 966 (N.D.Ohio 1998)  The Courts are well aware that U.C.C. remedies are to be liberally construed to ensure that the aggrieved party is put in as good a position as if the other party had fully performed. *Firwood Mfg. Co., Inc. v. General Tire, Inc*., 96 F.3d 163 (1996). Under Ohio's U.C.C., a seller is entitled to recover any and all "incidental damages" suffered, including, without limitation, charges, expenses or commissions incurred in the transporting, care and custody of the goods, from stopping delivery or otherwise resulting from buyer's

9

breach.  R.C. 1302.84.  The only injured party in this case is Jest because Plaintiff received all product.  As set forth in its Motion, Jest has suffered damages of $1,952,478.03, plus interest and attorney fees.

While Plaintiff weakly argues that Jest has not performed the contract, the admitted facts are that Jest delivered and Plaintiff accepted 155,558 hunting blinds. *See* Depo. Levis, p. 56-58; R.C. 1302.65.  Plaintiff testified that: "I agree that there is no undelivered product to the best of my knowledge…." *Id.* Furthermore, Plaintiff does not claim that it rejected the goods or informed Jest of any rejection.

> by seller is required for returns.  Any errors
> in the items or price must be reported within 10
> days."
> Q.    So this is on all of Jest's
> invoices, correct?  And you can flip through all
>
> Page 139
>
> 32 pages if you want to.
> A.    Okay.
> Q.    Correct?
> A.    Yes.
> Q.    Did you send any certified letters
> to them of damaged goods?
> A.    No.
> Q.    Or of damaged boxes?
> A.    No.
> Q.    Or of defective product?
> A.    No.
> Q.    Or of shortage in shipments?
> A.    No.

Plaintiff never rejected the goods.

That is the end of the issue - Plaintiff accepted the goods and never rejected them.  R.C. 1302.61.   A buyer cannot accept the goods, but refuse to pay for them.  *Marley Cooling Tower Co. v. Caldwell Energy and Environmental, Inc.*, 280 F.Supp.2d 651; 51 UCC Rep.Serv.2d 376. The "buyer must pay at the contract rate for any goods accepted." R.C. 1302.  As a matter law, Jest is entitled to full payment; thus, Plaintiff's Motion should be denied.

2.    PLAINTIFF  WAS  REQUIRED  TO  PAY  IN  FULL  ON  SHIPMENT FROM CHINA

As  a  key  starting  point,  the  sales  terms  required  partial  payment  on  deposit  and  the

remainder was due upon the order hitting the docks in China. *See* Affidavit of Kerry Forsdahl attached hereto as Exhibit "7." In short, full payment was required before shipping from China. That never happened.

While the parties may disagree on the percentage of the deposit, there is no question that full payment was due before shipping. **Plaintiff admitted it was required to pay before shipping from China. In July 2018, Plaintiff stated that Jest will "Receive money only when containers hit the water and then 75% will be paid as we have already paid 25%."** *See* Email attached hereto as Exhibit "2" and Exhibit "7.' Again, Jest disputes this random 25% deposit / 75% on shipment split in the email, but the allocations are ultimately irrelevant. The key admission is that Plaintiff admits Jest was to be paid in full (25% + 75% = 100%) when the shipments hit the water in China. Plaintiff knew full payment was required no later than shipping from China (i.e. hitting the water), but Plaintiff never timely or fully paid Jest. *Id.*

Plaintiff repeatedly breached and never paid the full amount before shipping. In direct conflict with the invoice terms and Plaintiff's aforementioned July email, Plaintiff refused to pay Jest at all. In September 2018, Plaintiff clearly breaches the parties' agreement and contradicts its own former admissions when it states, "**no more money until I get those 9 containers**."

> **Subject**: Re: URGENT - these 5 containers are in port and OPI has not paid us
> **From**: Dan Reaser <danreaser@gmail.com>
> **To**: Kerry Forsdahl <sales@jesttex.com>
> **Cc**: James Levis <jim@cpawebline.com>
> **Date Sent**: Fri, 28 Sep 2018 13:29:26 -0400
> **Date Received**: Fri, 28 Sep 2018 10:29:30 -0700 (PDT)
>
> ---
>
> #1 I told you there would be no more money until i get those 9 containers.

*See* Exhibits "3" and "7." Plaintiff breached the parties' contract, refused to pay and refused to timely pay. This email is direct evidence from the mouth of the Plaintiff that it breached (i.e.

"no more money").  Plaintiff was refusing to pay anything for 9 containers of product that were made, packed, shipped from China and sitting in the U.S. port.  As a matter of law, Jest was contractually entitled to be paid in full for those 9 containers at least a month earlier when they hit the water in China.  If payment was due when the goods were shipped, then why was Plaintiff withholding payment?  This is a clear admission of breach by Plaintiff.  Similarly, Plaintiff made additional admissions of non-payment stating:

**James Levis**

| | |
|---|---|
| From: | Dan Reaser <danreaser@gmail.com> |
| Sent: | Monday, September 10, 2018 11:23 PM |
| To: | kforsdahl@gmail.com; maryannvinci08@gmail.com; James Levis; jlcpa3@gmail.com |
| Subject: | American Express |

Since bank won't release as much money as you want. How about you make arrangement to accept American express card number. That would solve the problem.

Dan Reaser
President/CEO
OUTDOOR PRODUCT INNOVATIONS, Inc
Dannyboy Productions, LLC
440-822-8000 cell
"With Integrity, Honesty & Determination"

Not only are these emails admissions of the late payments, it is evidence of the shorting of payments (i.e. "since the bank won't release as much money as you want.")  Why would Jest want any money and why would Plaintiff be trying to release more money in mid-September if all orders had been timely paid in full on shipment from China in May, June, July and August?  Plaintiff does not claim that it ever timely paid Jest before shipment from China because it did not do so.  This singular fact alone requires the denial of Plaintiff's Motion and the granting of Jest's own Motion.

       Jest repeatedly demanded payment from Plaintiff, including, but not limited to, written

12

demands for payment on: May 14, 2018, June 25, 2018, July 3, 2018, July 5, 2018, July 31, 2018, September 3, 2018, September 10, 2018, September 28, 2018 and October 12, 2018. *See* MSJ Exhibits "9" - "15."  Jest pleaded for payment again and again, but was never paid in full.

From: Maryann Vinci <maryannvinci08@gmail.com>
Sent: Tuesday, July 31, 2018 3:20 PM
To: James Levis <jim@cpawebline.com>; Kerry Forsdahl <sales@jesttex.com>
Subject: Re: URGENT !!! PAYMENT 7/31

Jim,

Please respond on the invoices not paid from 7/17 and 7/24 emails. **We need an answer today!**

3 more containers have arrived into LA port and OPI needs them quickly. We cannot move them until all these invoices are paid.

Regards,
Maryann Vinci

*See* MSJ Exhibit "11."  Jest was not only issuing weekly invoices, but imploring Plaintiff to pay.  Jest sent demands stating "**URGENT!!!! PAYMENT… We need an answer today!... We cannot move them until all these invoices are paid**." *Id.*  Despite Jest's urgent request for payment, Plaintiff never paid stating, "no more money…."  Plaintiff breached and its Motion for Summary Judgment should be denied.

3.    <u>EXTRA FREIGHT</u>

Plaintiff correctly states that in a C.I.F. sale, the sales term means that the seller's price includes the ocean freight costs.  However, Plaintiff misconstrues the legal meaning of "freight."  Legally, the term "freight" in a C.I.F. contract refers to maritime "freight" of ocean shipping on a vessel. *Matter of Commonwealth Oil Refining Co., Inc.*, 734 F.2d 1079 (1984).  Freight, in C.I.F. does not include ground transport. *See* Exhibit "1." Once the goods get to the U.S., the buyer must receive the goods upon arrival, handle and pay for all subsequent movements of the goods, including taking delivery. *Continental Ore Corp. v. U. S.*, 191 Ct.Cl. 100 (1970); 423 F.2d 1248, 7 UCC Rep.Serv. 440; *See Also* Revised American Foreign Trade Definitions (1941);

13

Commercial Law, 2nd Ed. (Oxford Press 2016) p. 547-548; *Mexican Produce Co. v. Sea-Land Service, Inc.*, 429 F.Supp. 552 (1974); *Gradmann & Holler v. Continental Lines S.A.*, 504 F. Supp. 785 (1980); The Law as to C.I.F. Contracts, H. Goitein, (Yale Law 1924).  In fact, the term C.I.F. Incoterm, or "Cost, Insurance and Freight", is exclusive to maritime shipping. *https://www.icontainers.com/help/incoterms/cif/*  In this case, Jest agreed its price included all ocean freight and Jest even added in the rail shipping costs as well.  **What Plaintiff fails to inform the Court is that during the job it opted to do the shipping itself within the U.S. via trucking and demanded a credit from Jest (which it gave) for the rail shipping.** *See* Exhibit "1."

Plaintiff believed it could save money and ship internally within the U.S. more effectively by doing it itself.  So, Plaintiff asked Jest to terminate (shipping ends) all shipments in Long Beach, California, not Cleveland, Ohio.  *See* Affidavit of Maryann Vinci attached hereto as Exhibit "1."

**Subject**: Shipping
**From**: Mick Maynard <mick@opioutdoors.com>
**To**: Kerry Forsdahl <sales@jesttex.com>
**Cc**: Danny Reaser <danny@opioutdoors.com>, Dan Reaser <danreaser@gmail.com>
**Date Sent**: Wed, 23 May 2018 11:15:43 -0400
**Date Received**: Wed, 23 May 2018 08:15:46 -0700 (PDT)

Kerry,

Could you please confirm that containers 2-9 are being terminated at Long Beach?

Thank You
Mick Maynard
Outdoor Product Innovations
888-507-2021
mick@opioutdoors.com

Plaintiff entered into its own independent trucking contract with Amware for internal U.S. shipping.  *See* Exhibits "4" and "5."

Plaintiff attempted to handle its own logistics and shipping within the U.S. for awhile, but

14

had disastrous results.  *See* Exhibits "1" and "5."  As a result of Plaintiff's inability to handle the truck shipping on its own, it fired Amware and asked Jest to perform this work. *See* Exhibit "1." Plaintiff asked Jest to handle the trucking, agreed to pay for the truck shipping costs and discussed the rates for trucking and the train shipment credits with Jest.  *See* Exhibit "7."

forwarder to truck it

8:03 PM

3 day transit $6600, 5 day transit $5600.

8:06 PM

 What happened to 4100 plus transload minus train900

8:07 PM

That was what she got back then.  Apparently there were DOT inspections all last week and now rates are thru the roof this week due to increased demand.

Prices I gave include transload.

8:08 PM

So if you take off $900 for train it will be $5700 or $4700

8:09 PM

 When do you think they would leave California?

8:11 PM

*See* Text from Dan Reaser to Kerry Forsdahl attached hereto as Exhibit "6."  Plaintiff knew it

was paying for trucking acknowledging the costs as $4,100 per load, plus transload, minus the $900 for the train. *Id.* Jest explained that the cost to Plaintiff would be $4700-$5700.  No different than Plaintiff's direct contract with Amware for trucking, which Plaintiff was paying for, it agreed to pay Jest this add on to do the shipping via truck. *Id.*  Plaintiff also then wanted Jest to arrange for "trucking all containers from LA."

---------- Forwarded message ---------
From: **mick** <mick@opioutdoors.com>
Date: Thu, Jun 21, 2018 at 10:28 AM
Subject: Re: AWB for R300 Air Shipment
To: Maryann Vinci <maryannvinci08@gmail.com>

Hi Maryann, can you give me an update on containers 18-30. Like to know if we have sail dates booked. Also until further notice plan on trucking all containers from LA

Mick

*See* MSJ Exhibit "7."  Jest credited Plaintiff for the rail charges[2] and Plaintiff agreed to pay the trucking.  *See* Exhibit "6" and "7."  There is no question that Plaintiff is liable for the trucking freight costs as it is the party that chose to truck the goods.  If as Plaintiff argues, Jest agreed to pay the trucking cost, then why was Jest crediting the rail shipments. If any type of freight was included in the cost, there would be no credit at all.  Plaintiff acknowledged numerous times that it was responsible to "pay for trucking" because it was their decision to change the method of shipment, but Plaintiff still never paid these charges. *See* Text above and MSJ Exhibit "8." Jest paid for all vessel freight to get the product to the U.S. and also arranged for rail shipping by train to Cleveland. Plaintiff changed the method to trucking, terminated all deliveries in California and agreed to pay the trucking, but now simply refuses to pay. *See* Exhibit "1."

Plaintiff changed the termination point of shipments, entered into its own trucking

16

contract, changed the shipping method, and agreed to pay for trucking. *See* Exhibits "1", "4", "5", "6" and "7."  Despite all this and even though Jest credited Plaintiff's account for the rail shipping, Plaintiff still never paid the trucking costs and charges.  Plaintiff just stuck Jest with more costs and more unpaid bills. To place Jest in as good a position as if Plaintiff had fully performed, requires the Court to award Jest all additional freight charges. *Nobs*; *Rasnick*.  These damages provide no windfall to Jest, these are simply pass through costs Jest owes to the third-party shipping companies.  Plaintiff's Motion for Summary Judgment should be denied, and Jest's granted.

B.     <u>DUTY CHARGES</u>

Plaintiff argues it should not be liable for duty charges, but they have no legal support for their position.  **The law states that when the sales terms are C.I.F., the buyer is responsible for all duty, taxes and import charges**. *Continental Ore Corp. v. U. S*., 191 Ct.Cl. 100 (1970); 423 F.2d 1248, 7 UCC Rep.Serv. 440; *See Also Mexican Produce Co. v. Sea-Land Service, Inc*., 429 F.Supp. 552 (1974); *Gradmann & Holler v. Continental Lines S.A.*, 504 F. Supp. 785 (1980); Revised American Foreign Trade Definitions (1941); Commercial Law, 2nd Ed. (Oxford Press 2016) p. 547-548; The Law as to C.I.F. Contracts, H. Goitein, (Yale Law 1924); C.I.F. CONTRACTS IN INTERNATIONAL COMMERCE, 53 Harv. L. Rev. 792.  The Plaintiff's own sales terms in this matter were admittedly C.I.F.

Plaintiff's arguments on the issue of duty are scattered and nonsensical. Plaintiff claims that because it purchased from Jest - a U.S. company - it should not be liable for duty.  Plaintiff cites to no legal authority whatsoever for its position and it contradicts long standing law.  Stated succinctly, it is the sales terms that govern duty, not the location of the seller.  As a matter of

---

[2] On Jest's invoices, the Court will often note $900 credits starting in June/July 2018.  Those are the

law, under C.I.F. terms, the Plaintiff/Buyer pays all United States Customs duty. *Id.* It does not matter if the seller is from the U.S., Russia or Mars, if the sales terms are C.I.F. and duty is owed, then the buyer pays.  In this case, Plaintiff is the buyer under C.I.F. terms and duty is owed – so it is liable to Jest for $488,622.66[3] relating to duty charges.

Once again, the fact that duty was owed and that the product was shipping from China was not a revelation.  Plaintiff went to China to inspect the process and the suppliers. There was a mass of communication back and forth about dates of shipment from China.  Plaintiff's own trucking contract with Amware identified the product as "Overseas Containers."

```
Customer: Outdoor Product Innovations, Inc
Contact    Danny Reaser
Address    177 Reaser Ct
           Elyria, OH 44035

           Phone:    ___888-507-2021___  Fax:
```

| COMMODITY, PACK, TYPE OF CONTAINER |
| --- |

Walmart Project
- Unload 70-90 Overseas Containers
- Floor Loaded
- 1 SKU per Container
- Stackable
- 90% TL OUTBOUND
- 10% LTL OUTBOUND

*See* Exhibit "5."  Plaintiff knew the product was coming from China and had to pass through U.S. customs and Plaintiff even met with Jest in China.

Moreover, Jest also specifically asked Plaintiff if the sales should be priced with duty (LDP - Landed Duty Paid) or without duty – (C.I.F.)  *See* MSJ Exhibit "5." (emphasis added).

Forwarded message
From: Mick Maynard <mick(5)opioutdoors.com>
Date: Mon, Oct 9, 2017 at 2:46 PM
Subject: Re: blinds
To: Kerry Forsdahl <kforsdahl@gmail.com>

---

credits for train transport. *See* MSJ Exhibit "4."

[3] This sum is as of September 23, 2019, but interest and penalties continue to accrue.

Just to port.

On Mon, Oct 9, 2017 at 2:45 PM, Kerry Forsdahl <kforsdahl@gmail.com> wrote:

**LDP delivered to your door? Or Just CIF delivered to port? <u>Most factories would never quote with duty, but I want to be sure.</u>**

Jest informed Plaintiff that "most factories would never quote duty, but I want to be sure." Plaintiff knew it owed duty - it is simply refusing to pay it.  See Exhibit "7." Finally, Plaintiff initially paid for the duty charges in the spring of 2018.  **These initial duty payments are an admission by Plaintiff that is was liable for duty.** *Metaframe Corp.*; *Massie.*

Later in the process, in an effort to hide their true classification and avoid duty, Plaintiff asked Jest to refer to the hunting blinds as "back pack tents" in the custom's documents. *See* MSJ Exhibit "1."  Plaintiff's trickery did not work.  U.S. Customs caught the incorrect classification and changed it back.  When the product was reclassified and assessed with duty charges again, Jest informed Plaintiff that duty was owed. *See* MSJ Exhibits "21", "22" and "23."  Jest's counsel sent Plaintiff's counsel the Custom's notices with the detail on the right to appeal. *Id.* Plaintiff had 6 months to contest the change in duty classifications, but Plaintiff did not appeal or ask Jest to appeal.

Finally, Plaintiff also makes the hollow argument that it would not have made the orders if it knew duty was owed, but that ship has sailed (literally and figuratively) because Plaintiff has already accepted all 155,558 hunting blinds. Plaintiff did not cancel the orders. *See* Depo. Forsdahl p. 186-187.  Buyer's remorse is not a defense.  The Ohio Supreme Court held that it is not the responsibility or function of the courts to rewrite a parties' contract in order to provide for a more equitable result. *Aultman Hosp. Assn. v. Community Mut. Ins. Co*. (1989), 46 Ohio St.3d 51, 54-55.  As the U.S. Supreme Court held nearly 150 years ago:

It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, **or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written. But such is not the law. A contractor must stand by the words of his contract;** and, if he will not read what he signs, he alone is responsible for his omission.

*Upton v. Tribilcock*, 91 U.S. 45 (1875); *See Preferred Capital, Inc. v. Power Eng. Group, Inc*., 112 Ohio St.3d 429, 2007-Ohio-257, 860 N.E.2d 741, ¶ 10.  The Ohio Supreme Court has long recognized that "where a contract is plain and unambiguous, it does not become ambiguous by reason of the fact that in its operation it will work a hardship upon one of the parties thereto and a corresponding advantage to the other, [and] that it is not the province of courts to relieve parties of improvident contracts." *Ohio Crane Co. v. Hicks* (1924), 110 Ohio St. 168, 172, 143 N.E. 388.  Furthermore, the "…courts are powerless to save a competent person from the effects of his own voluntary agreement." *Ullmann v. May* (1947), 147 Ohio St. 468, 476, 34 O.O. 384, 72 N.E.2d 63.  Where sophisticated parties enter into a commercial contract from equal bargaining positions and the contract authorizes a result the courts are bound to enforce it. *Joseph J. Freed v. Cassinelli* (1986), 23 Ohio St.3d 94.  The same holds true here.

The C.I.F. designation is on the Plaintiff's own purchase orders and that requires the buyer to pay duty. *See* MSJ Exhibit "2."  A party is bound by the terms of its contract. *Upton; Preferred Capital, Inc.; Ullman; Joseph J. Freed.*  A buyer who contracts to purchase a multi-million dollar office building "as is" may ultimately regret it when it learns of construction defects, but that was the deal.  A buyer who buys a business without the right to audit the books may regret it when it learns of the poor financial condition of the business, but that was the deal. A buyer who buys goods on C.I.F. sales terms may regret paying duty charges, but that was the deal. Plaintiff purchased the goods C.I.F. and under C.I.F. terms the buyer must pay all duty

charges. *Continental Ore Corp.*; *Mexican Produce Co.; Gradmann & Holler.* It is not the responsibility or function of the courts to rewrite a parties' contract.  In summary, Plaintiff knew it owed duty, initially paid duty and was informed of the duty in 2017.  See MSJ Exhibits "1" and "5."  Plaintiff's argument that it would have cancelled the orders is self-serving, speculative, parole evidence that must be excluded because it has already accepted all the goods.  Finally, Plaintiff's argument is irrelevant because the C.I.F. contract it entered into requires Plaintiff to pay duty.  Plaintiff's Motion for Summary Judgment should be denied and Jest's granted.

### 5.   PLAINTIFF IS LIABLE FOR VALUE ADDED TAX (VAT)

As set forth above, a party injured by a breach of contract is entitled to the benefit of the bargain - to be placed in as good a position as he would have been in had the contract been fully performed. *Rasnick v. Tubbs*, 126 Ohio App.3d 431, 435, 437 (1998); *Nobs Chemical, U.S.A., Inc. v. Koppers Co., Inc.*, 616 F.2d 212 (1980); *Wells Fargo Bank, N.A. v. U.S.,* 88 F.3d 1012, 1021 (1996); Restatement of the Law 2d, Contracts (1981) 102–103, § 344. Similarly, Jest is entitled to recover all "incidental damages" as a result of a breaching buyer like Plaintiff, including all expenses, charges or damages "otherwise resulting from the breach." R.C. 1302.84.

Plaintiff argues that Jest cannot recover damages relating to VAT because it lacks standing.  Plaintiff's argument is simply inaccurate.  Jest is not claiming the Chinese government assessed it with VAT; Jest is claiming that its manufacturers and suppliers are requiring Jest to reimburse them for the VAT caused by Plaintiff's non-payment. *See* Affidavit Graves attached to MSJ as Exhibit "19."  The reference to this component of damages as VAT is simply to explain where this part of Jest's damages arises from in this matter.  If Plaintiff had timely and fully paid Jest, the VAT rebate would not have been lost.  However, Plaintiff never timely or fully paid Jest causing these damages.  Jest is liable to its manufactures and suppliers to pay them for these

taxes. *See* Graves Affidavit.  The fact that these damages will flow from Plaintiff, to Jest, to the manufacturers, to the Chinese government does not cause Jest to lose standing. Again, by way of example, imagine a construction contract.  The property owner hires a general contractor. The general contractor hires a subcontractor and the subcontractor rents equipment.  Now imagine the owner never pays the general contractor and the general never pays the subcontractor.  The subcontractor then gets assessed with late payment penalties for non-payment of the rental of the equipment.  The fact that the penalty damages will flow from the general to the subcontractor and ultimately to the equipment rental company in no manner negates the general contractor's damages or its standing to sue the owner for the damages.  The damages remain and the liability remains. The same is true here.

The hunting blinds were made by Jest for Plaintiff in China and Plaintiff visited Jest's suppliers in China.  *See* MSJ Exhibit "19."  In this matter, because Plaintiff failed to timely pay, Jest's suppliers were assessed with VAT taxes and lost the export rebate in the amount of $472,770.10.  JEST SUPPLIERS AND MANUFACTURERS ARE DEMANDING PAYMENT OF THE VAT FROM JEST. *See* MSJ Exhibit "19."  Those suppliers in turn then assessed Jest with those amounts.  Moreover, due to the lapse in time in payment, the Chinese government also assessed a 100% penalty on the tax, bringing the total VAT related damages to $945,540.20. In order to place Jest in as good of a position as if Plaintiff had fully performed, Jest is legally entitled to recover these VAT damages from Plaintiff in the amount of $945,540.20.  *See* MSJ Exhibit "20."  *Rasnick; Nobs; Wells Fargo Bank*.  Plaintiff's Motion for Summary Judgment should be denied.

Plaintiff also argues that there is no proper rule 56 evidence of the VAT charges.  That is also incorrect.  The document and assessment regarding the VAT is a certified, official stamped

22

document from the Chinese government.  *See* MSJ Exhibit "20."  Additionally, Jest's owner Douglas Graves testified in a sworn affidavit as to the amounts due and owing relating to the VAT. *See* MSJ Exhibit "19."  Thus, not only is the claim supported by self-authenticated records from the Chinese government, but there is sworn testimony from the owner of Jest as well. Evid.R. 902(3)(4) and (8); FRCP 56.  *See* MSJ, Exhibits "19" and "20."

Jest is also entitled to recover the VAT taxes under Ohio's U.C.C. statute.  Ohio Revised Code section 1302.84 states that an injured seller can recover all "incidental damages" caused by a breaching buyer.  These VAT tax charges are damages, charges or expenses "otherwise resulting" from Plaintiff's breach and Jest is entitled to recover theses damages as a matter of law.  R.C. 1302.84.  The VAT taxes are an incidental damage caused by Plaintiff's breach. *Commonwealth Edison Co. v. Allied Chemical Nuclear* Products 684 F.Supp. 1429 (1988). Plaintiff is liable to Jest for these damages in the amount of $945,540.20 ($472,770.10 for the tax and $472,770.10 for the penalty).  *See* MSJ Exhibits "19" and "20."

Finally, under C.I.F. terms, Plaintiff is liable to pay for "**the cost of certificates of origin, consular invoices or any other documents issued in the country of origin or of shipment,** or of both, which may be required for importation of the goods into the country of destination and, where necessary, for their passage in transit through another country." *Mexican Produce Co. v. Sea-Land Service, Inc*., 429 F.Supp. 552 (1974); *Gradmann & Holler GmbH v. Continental Lines,* 504 F.Supp. 785 (1980) (emphasis added).  Under the law, Jest is clearly entitled to recover these VAT taxes as other costs "issued in the country of origin or of shipment…."  These taxes and costs were incurred as a result of their exportation without payment by Plaintiff.  **Jest also warned Plaintiff repeatedly about these VAT taxes and requested that Plaintiff pay or appeal.** *See* MSJ Exhibits "21" and "22."  Once again, Plaintiff

did nothing.  Plaintiff did not pay under a reservation of rights or appeal.  Jest is liable to its manufacturers and suppliers to pay these taxes and penalties in the amount of $945,540.20. *See* MSJ Exhibits "19" and "20."  In order to place Jest in as good of a position as if Plaintiff had timely and fully performed, Plaintiff is liable for these VAT taxes.  If the payments had been timely made, the VAT rebate would not have been lost, the VAT penalty would not have been assessed and the manufacturers would not be demanding this from Jest.  These VAT taxes are damages suffered by Jest as a result of Plaintiff's breaches.  Plaintiff's Motion for Summary Judgment should be denied, and Jest's granted.

C.     PLAINTIFF CANNOT AVOID ITS DEBT BY PAYING A THIRD-PARTY

Part of Plaintiff's argument appears to be that it reduced its damages to Jest by paying third parties.  However, Jest never received this money and Plaintiff's *alleged* payment to a third-party like C&H is improper further evidencing Plaintiff's breaches.

In order for a payment to discharge a contractual obligation, it must be made to the payee or to an agent having authority from the payee. 73 Ohio Jur. 3d Payment and Tender § 21 citing *Eaton v. Calig*, 4 Ohio App.3d 22 (10th Dist. 1982) and *Nolte v. Hulbert*, 37 Ohio St. 445 (1882). In this case, Plaintiff and Jest agreed that Plaintiff would directly pay Jest in exchange for the hunting blinds. Jest performed by delivering the hunting blinds to Buyer.  Jest never agreed that a third-party could accept payments owed to it or authorized some agent to accept payments on its behalf. This is not a creditor's bill action.   Moreover, Jest objected to Plaintiff's efforts to obtain the warehoused goods by filing motions with this Court.  See Docket entries 51and 52.  Plaintiff failed to perform because it never paid Jest in full and now claims that some of its payments were unilaterally redirected to a third-party. However, legally Plaintiff could only discharge its contractual obligation to Jest by paying Jest directly.  Plaintiff's Motion for

24

Summary Judgment should be denied as a matter of law.

D.    FRAUD[4] BY PLAINTIFF

Plaintiff claims that Jest cannot recover for fraud because it is not a tort to breach a contract, but the U.C.C. **was not** enacted to eliminate all common-law causes of action other than a UCC cause of action. Principles of law and equity, including common-law fraud, supplement the provisions of the UCC governing transactions in goods "[u]nless displaced by…particular provisions of [the UCC]…" R.C. 1301.03. No provisions of the UCC have displaced actions for fraud. *See, generally*, 1 White & Summers, Uniform Commercial Code (3 Ed.1988) 19–20. In fact, unlike the exclusive remedy provisions of the old Uniform Sales Code, *see Saberton v. Greenwald* (1946), 146 Ohio St. 414, the UCC provides that remedies for fraud include those remedies available under the UCC sales provisions without making them exclusive. R.C. 1302.95. Accordingly, the courts hold that a cause of action for fraud is maintainable in addition to a UCC cause of action.  *Ohio Sav. Bank v. H.L. Vokes Co.,* 54 Ohio App.3d 68 (1989). Fraud claims and remedies co-exist in U.C.C. sales like the case at bar.  R.C. 1302.95.

Jest agrees with the broad proposition under the law that **generally**, "the existence of a contract action … excludes the opportunity to present the same case as a tort claim."  However, a tort claim based upon the same actions as those upon which a claim of contract breach is based does exist if the breaching party also breaches a duty owed separately from that created by the contract. *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137 (1996) citing to

---

[4]  Moreover, parties are allowed and encouraged to plead claims in the alternative.  FRCP. 8(d)(2) and (3).

*Battista v. Lebanon Trotting Assn*. (C.A.6, 1976), 538 F.2d 111, 117. This exception negates Plaintiff's position. The Courts hold that parallel fraud and contract claims may be brought if the injured party (1) demonstrates a legal duty separate from the duty to perform under the contract; (2) points to a fraudulent misrepresentation that is collateral or extraneous to the contract; **or** (3) seeks special damages that are unrecoverable as contract damages. *See Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc*., 500 F.3d 171, 183–184 (2d Cir.2007). If any of those 3 exceptions are shown, a fraud claim exists.

In this matter, even without a contract, there is a duty not to lie or misrepresent facts. In this matter, even without a contract, there is duty not to take property without payment. In this matter, even without a contract, there is duty to pay for goods and services provided. Plaintiff's lies and misrepresentations about a third-party bank refusing to release money, or monetary restrictions placed upon it, which induced Jest to keep delivering products is actionable fraud as it is collateral to the contract. The obligation to pay existed under the contract, but the lies for the reason for non-payment to induce further shipments are distinct, collateral and extraneous. Finally, as set forth in Jest's Motion for Summary Judgment any damages not recoverable for breach of contract may be recovered under its fraud count. Thus, the fraud claims co-exist. Jest is not seeking double recovery for the same damages twice. Jest is only seeking recovery for any damages not covered by breach of contract (if any), plus punitive/special damages, which are not normally recoverable for breach of contract.

The elements of fraud are (1) a representation of a fact, or concealment when there is a duty to speak, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance on

26

the representation or concealment, and (6) an injury proximately caused by that reliance. *Black v. Constentino* (1996), 117 Ohio App.3d 40; *Williams v. Aetna Fin. Co.* (1998), 83 Ohio St.3d 464, 475.  Fraud can be shown when the false promise is either independent of or consistent with the written instrument.  *Galmish v. Cicchini* (2000), 90 Ohio St.3d 22.  Fraud claims and remedies co-exist in UCC sales like the case at bar.  R.C. 1302.95.  In fraud cases, an injured party, like Jest, is entitled to punitive damages. *Preston v. Murty*, 32 Ohio St.3d 334 (1987).

As clearly laid out in Jest's Motion for Summary Judgment, but for Plaintiff's misrepresentations on its inability to pay, monetary limits and bank restrictions, Jest would have stopped shipping or returned the goods. *See* Exhibit 7."  If the sales had been stopped or the goods were returned, then there would be no open VAT liabilities to the manufacturers and suppliers in China.  If the sales had been stopped or the goods returned, Jest would not have incurred additional damages for extra freight and storage. *Id.* To the extent these damages are not covered by contract, Jest is entitled to recover them under fraud.  This is not a case where Plaintiff rejected the goods.  This is not a case where Plaintiff did not receive the goods.  This is not a case where Plaintiff did not have the funds to pay.  Plaintiff lied and misrepresented bank restrictions, cash flow limits on payment to cause Jest to rely upon them and continue shipping.

In this matter, Jest threatened to stop shipping product to Plaintiff because of Plaintiff's late payments and non-payment.  In response, Plaintiff claimed that its "**bank**" would not allow the release of more money.  Plaintiff even confirmed this in writing stating the "bank won't release as much money…."

27

**James Levis**

| | |
|---|---|
| From: | Dan Reaser <danreaser@gmail.com> |
| Sent: | Monday, September 10, 2018 11:23 PM |
| To: | kforsdahl@gmail.com; maryannvinci08@gmail.com; James Levis; jlcpa3@gmail.com |
| Subject: | American Express |

Since bank won't release as much money as you want. How about you make arrangement to accept American express card number. That would solve the problem.

Dan Reaser
President/CEO
OUTDOOR PRODUCT INNOVATIONS, Inc
Dannyboy Productions,LLC
440-822-8000 cell
"With Integrity, Honesty & Determination"

*See* MSJ Exhibit "24."  In truth, there was no bank that was refusing to issue payment - the Plaintiff was lying to Jest.  No bank had refused payment, Plaintiff was not cash strapped; in reality, it was a fraudulent misrepresentation to induce Jest to continue to deliver without payment.  During depositions, Plaintiff admitted that there was no third-party bank, he said it was the "BANK OF DAN" that was refusing payments (i.e. himself). *See* Depo. p. 183-5.  When Plaintiff's accountant was questioned on this issue, he admitted there was no third-party bank. *See* Depo. Levis, p. 78.

Plaintiff lied about these imaginary bank restrictions to keep deliveries coming in without payment to Jest.  These were fraudulent misrepresentations by Plaintiff that Jest relied upon in continuing to ship product. *See* MSJ Exhibit "1."  If there had been no misrepresentations by Plaintiff or the truth had been known, additional freight charges could have been avoided.  *See* Exhibit "7." If there had been no misrepresentations, Jest could have stopped shipments outside the U.S. and avoided the assessment of the duty charges.  If there had been no misrepresentations by Plaintiff, Jest could have avoided the VAT charges by selling the goods somewhere else. *Id.* Plaintiff's Motion for Summary Judgment should be denied, and Jest's granted.  Plaintiff's lies

and misrepresentation caused Jest more harm. Jest seeks compensatory damages from Plaintiff for fraud for any portion of the $1,952,478.03 not governed by the breach of contract (if the Court finds any portion of the damages is not governed by the contract/U.C.C.), plus punitive damages and attorneys' fees.

### D. OTHER ARGUMENTS RAISED BY PLAINTIFF

Throughout its Motion, Plaintiff raises a variety of scattered arguments and positions that do not fit squarely within the claims. Jest will address those arguments here such that the Court obtains an accurate understanding of this case.

Plaintiff claims that the orders were done in 3 phases – false. Plaintiff ordered and Jest agreed to produce 155,558 hunting blinds. This deal was made in late 2017, and the first deposit was paid in early January 2018. The contract is the contract and no amount of machinations can change the true terms of the contract. *Aultmann; Upton Ullman*. There were no "phases."

Plaintiff also claims in its brief that by May of 2018 it had paid $1,000,000.00 but received no product. That statement is true, but completely misleading. By May of 2018 more than $2.9 million of deposits should have been paid as Plaintiff had issued the full order. Plaintiff admittedly never paid the full deposit.

Plaintiff claims that Jest somehow acknowledged it was at fault referencing an out of context email from Doug Graves stating, "I was behind the 8 ball." *See* Plaintiff's MSJ. p. 3. An accurate reading of that email shows quite the opposite - the fault lies with Plaintiff. In that email, Jest had actually forewarned Plaintiff to print the fabric sooner stating, "I just wish everyone could remember me saying in December [2017] I need to print 300,000 meters of fabric before the shutdown [i.e. Chinese New Year]." However, Jest could not print the fabric in December 2017 because Plaintiff had not paid the money required. Similarly, in that same email

29

Doug Graves expressly states that Plaintiff was a constantly moving target, "But just because the goal post have [sic] been moved on me now **does not mean I did anything wrong.  Just trying to make me look bad is all."**  Plaintiff's MSJ, Exhibit "B."  Plaintiff's ham-handed effort to blame Jest by selectively quoting from this email fails miserably.  If Plaintiff had accurately read the full email, it would have realized that once again the problems are all of Plaintiff's own creation.

Plaintiff also argues that somehow the obligation on duty changes because Jest is the importer. Such an argument is nonsensical because the importer is always the party of record for the shipment into the U.S. from a custom's perspective.  Jest agrees that the U.S. government is assessing it with duty.  But that is not the real issue, the real issue is the liability under a C.I.F. sale for duty.  In a C.I.F. sale, duty ultimately falls to the buyer (here the Plaintiff).  Plaintiff is comparing apples and oranges.  The fact that the U.S. Government assesses the duty to the importer has no bearing on the contractual liability for duty between the seller and buyer.  Again, the Plaintiff is liable to Jest and then Jest in turn pays the money to U.S. Customs.  The fact that the damages flow up the chain to the U.S. government in no manner negates Jest's ability and right to collect those charges from Plaintiff. By way of example, imagine the sale of real property.  The seller agrees to sell land to a buyer under a land contract.  The land contract states that buyer shall pay all real estate taxes.  If the buyer breaches and fails to pay the taxes, the government will look to the seller for the taxes, but contractually the buyer remains liable to the seller for the taxes.  It is the contract that controls.

Plaintiff cites to case law stating that the importer pays duty. *See* Plaintiff's MSJ, p. 22 citing to *U.S. v. Golden Gate Petroleum*. However, the case law cited by Plaintiff is off point because it does not address the buyer's responsibility for payment of duty on a C.I.F. sale or

30

when the buyer is contractually obligated to pay for duty.  While Jest is currently being assessed with duty by U.S. customs, Plaintiff remains liable to Jest for those charges.

The U.S. government website on importing further supports Jest.  The U.S. Government states that "the importing country requires that all applicable tariffs (import taxes levied by the destination country) and local taxes, including value-added tax (VAT), be paid. **Many companies** <u>**require the buyer to pay**</u> **these tariffs and taxes**. *https://www.export.gov/article?id=Incoterms-Overview*.  The U.S. Government states that the buyer is required to pay in many instances. Moreover, the different shipping terms adopted by the U.S. government include: EXW Ex Works, FCA Free Carrier, CPT Carriage Paid To, CIP Carriage and Insurance Paid To, DAT Delivered at Terminal, DAP Delivered at Place, **DDP Delivered Duty Paid;** FAS Free Alongside Ship, FOB Free on Board, CFR Cost and Freight and **CIF Cost, Insurance, and Freight**.  The Court can clearly see that DDP or delivered duty paid is quite distinct from C.I.F.  If C.I.F. terms were already priced inclusive of duty charges, then there would be no need for the legal designation for DDP by the U.S. government.

Plaintiff also argues that Jest's Emergency Motion to Escrow Goods somehow negates its liability on duty charges claiming Jest is the still the owner of the goods and it was not a *real* C.I.F. sale.  These arguments are simply nonsensical and false.  First, it is the contract terms that control, not wishful thinking.  Second, Plaintiff has all the goods and is the owner.  Third, the Court allowed Plaintiff to obtain the warehoused goods during this lawsuit. *See* Docket Entries 51 and 52. This Court's ruling undermines Plaintiff's entire argument and is the law of the case. The doctrine of law of the case provides that the courts should not "reconsider a matter once resolved in a continuing proceeding." 18B Wright and Mille, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION AND RELATED MATTERS § 4478 (4th ed.2015). The

31

purpose of the law-of-the-case doctrine is to ensure that "the same issue presented a second time in the same case in the same court should lead to the same result." *Howe v. City of Akron*, 801 F.3d 718 (6th Cir. 2015) citing *Sherley v. Sebelius*, 689 F.3d 776, 780 (D.C.Cir.2012).  Plaintiff obtained the goods stored in a warehouse during this lawsuit and has title.  The Court allowed Plaintiff to obtain the stored goods stating that "this case presents a run of the mill contract dispute… [and] defendant did not have possession of the blinds…"  *See* Docket 51 and 52. Additionally, the Court denied Jest's request to sell the goods.  *See* January 8, 2019, non-document order.  That is the law of the case.  The product received by Plaintiff is Plaintiff's property and Jest had no ability to sell them itself or prevent their sale.  Thus, Plaintiff is liable for the duty.  The Plaintiff cannot have its cake and eat it to (i.e. claim ownership to obtain the goods, but then disclaim ownership to avoid duty charges).   As set forth herein above, Plaintiff's Motion should be denied, and Jest's granted.

III.     CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment should be denied, and Jest's Motion for Summary Judgment granted.

Respectfully submitted,

/s Michael R. Stavnicky
(Reg. No. 0063726)
Singerman, Mills, Desberg & Kauntz Co., L.P.A.
3333 Richmond Road, #370
Beachwood, Ohio 44122
mstavnicky@smdklaw.com
(216) 292-5807
Attorneys for Defendant/Counterclaimant
Jest Textiles, Inc.

<u>CERTIFICATE OF SERVICE</u>

Pursuant to Fed. R. Civ. P. 5(d) and 5(e), I hereby certify that on this 13th day of December 2019, a copy of the foregoing was delivered by email, regular U.S. Mail or via the Court's Electronic Filing System, where applicable, to all parties.

<u>/s/ Michael R. Stavnicky</u>