IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| OUTDOOR PRODUCT INNOVATIONS, INC. | ) CASE NO. 1:18-CV-02457 |
| | ) JUDGE GAUGHAN |
| Plaintiff | ) |
| vs. | ) |
| JEST TEXTILES, INC., ET AL. | ) |
| Defendants. | ) |

_____

DEFENDANT'S REPLY BRIEF IN
SUPPORT OF SUMMARY JUDGMENT
_____

Defendant Jest Textiles, Inc. ("Jest" or "Seller"), by and through its undersigned counsel, hereby files its Reply Brief in Support of its Motion for Summary Judgment in the above-captioned matter.

I.  LAW AND ARGUMENT

Jest, the party injured by Plaintiff's breach of contract, is entitled to the benefit of the bargain - to be placed in as good a position as it would have been in had the contract been fully performed. *Rasnick v. Tubbs*, 126 Ohio App.3d 431, 435, 437 (1998); *Nobs Chemical, U.S.A., Inc. v. Koppers Co., Inc.*, 616 F.2d 212 (1980); *Wells Fargo Bank, N.A. v. U.S.,* 88 F.3d 1012, 1021 (1996); Restatement of the Law 2d, Contracts (1981) 102–103, § 344. Under Ohio's U.C.C., Jest is also entitled to recover all "incidental damages" as a result of a breaching buyer like Plaintiff, including all expenses, charges or damages "otherwise resulting from the breach." R.C. 1302.84. As set forth in Jest's Motion for Summary Judgment, Jest has suffered substantial damages as a result of Plaintiff's breaches. Jest's damages are as follows: Product $154,829.95;

1

Storage and extra freight $363,485.22; Duty charges $488,622.26; VAT taxes $472,770.10; and VAT penalty $472,770.10. *See* MSJ Exhibit "1." The Court should grant Jest's Motion for summary judgment, awarding it $1,952,478.03, plus 18% interest, costs and attorneys' fees.

    A.    <u>PLAINTIFF ACCEPTED ALL GOODS</u>

The simple facts are that Plaintiff received 155,558 hunting blinds, but never timely or fully paid Jest. While Plaintiff seeks to distract the Court with misdirection, this simple truth remains a constant. Plaintiff received all product and never timely or fully paid Jest.

Plaintiff admits receiving and accepting 155,558 hunting blinds. *See* Depo. Levis, p. 56-58. Plaintiff testified that: "I agree that there is no undelivered product to the best of my knowledge…." *Id.* Furthermore, Plaintiff does not claim that it rejected the goods or informed Jest of any rejection. That is the end of the issue - Plaintiff accepted the goods and never rejected them. R.C. 1302.65. A buyer cannot accept the goods, but refuse to pay for them. *Marley Cooling Tower Co. v. Caldwell Energy and Environmental, Inc.*, 280 F.Supp.2d 651; 51 U.C.C. Rep.Serv.2d 376; R.C. 1302.65. The "**buyer must pay at the contract rate for any goods accepted.**" R.C. 1302.65 (emphasis added). As a matter law, Jest is entitled to full payment and its Motion for Summary Judgment should be granted.

    B.    <u>BATTLE OF THE FORMS</u>

In its Brief, Plaintiff makes a half-hearted battle of the forms argument; however, Plaintiff's argument literally ignores the key language of Ohio's U.C.C. statute. As between businesses, any additional "**terms become part of the contract unless** one of the following applies:

> (1) The offer expressly limits acceptance to the terms of the offer.
> (2) They materially alter it.
> (3) Notification of objection to them has already been given or is given within a

2

reasonable time after notice of them is received."

R.C. 1302.10; U.C.C. 2-2-7. The baseline is that all the terms in the invoices automatically become part of the parties' contract **<u>unless</u>** an exception applies. As between merchants, additional terms are presumed to be included in the contract under U.C.C. § 2–207(2); therefore, the party opposing the inclusion of that term has the burden of proving that its inclusion will materially alter the contract. *American Ins. Co*., 978 F.2d at 1192 n. 9; *Comark Merchandising, Inc. v. Highland Group, Inc*., 932 F.2d 1196, 1201 (7th Cir.1991). The burden is upon the Plaintiff to prove that some term will materially alter the contract. Here, Plaintiff does not meet its burden.

Plaintiff does not argue that their offer was expressly limited, nor do they claim to have provided notice of objection to any terms. Thus, Plaintiff's sole argument is that the invoice terms "materially alter" the contract. However, there was no material alteration of the terms. The product prices remain the same. The actual products being sold remain the same. The sales were all C.I.F. There was no material change.

The Courts have addressed what constitutes a material alteration under the U.C.C. numerous times. In determining what is a material alteration, comment 5 to U.C.C. § 2–207 (i.e. R.C. 1302.10) specifically cross-references U.C.C. § 2–719, which provides, in pertinent part, that as long as a clause is <u>reasonable</u> under U.C.C. § 2–719, it does not materially alter a contact under U.C.C. § 2–207**.** The Courts hold that a "material alteration in a contract between merchants results in <u>surprise or hardship if incorporated without express awareness</u> of the other party…" *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc*., 7 F.Supp.2d 954, (1998) (emphasis added). In order to constitute a material alteration, the terms must be unreasonable, surprising or cause a hardship. None of Jest's terms meet that severe test.

3

1.     CHARGING INTEREST IS NOT A MATERIAL ALTERATION

The charging of interest is not a material alteration.  Courts hold that a clause that provides for 18% interest to the damaged seller (i.e. Jest) is not a material alteration of the terms.  "We conclude that the provisions for interest, included upon the invoice, are additional terms on a written confirmation. They become part of the contract inasmuch as… the the additional term does not materially alter the contract…" *Elgin Steel, Inc. v. Perfection Manufacturing Corporation* (5th Dist.  Case No. CA-1955), 1981 WL 622253, UCC Rep.Serv.2d 545; *See Crown Foodservice Group, Inc. v. Hughes* (S.D. Ohio 1999), 1999 WL 33117269.  Thus, 18% interest, which is the same amount of interest in Jest's invoices, has been found by the Courts not to materially alter the contract.  *Id.* It is part of the terms.

2.     ATTORNEY'S FEES CLAUSE IS NOT A MATERIAL ALTERATION

Similarly, the Courts have also found that an attorney's fees provision in favor of an injured seller - like Jest - is not a material alteration to the terms.  "Defendants have failed to demonstrate unreasonable surprise or hardship, the Court concludes that **the interest and attorneys' fees provisions did not materially alter** the parties' agreement…" *Rocheux Intern. of N.J., Inc. v. U.S. Merchants Financial Group, Inc.* 741 F.Supp.2d 651, 72 UCC Rep.Serv.2d 1048, (2010) (Emphasis added).  Thus, a provision awarding attorney's fees to an injured seller who is forced to bring a claim to recover damages is not a material alteration to a contract.

3.     LIMITATION OF REMEDIES IS NOT A MATERIAL ALTERATION

Similarly, limitations or restrictions on the buyer's remedies or right of recovery is not a material alteration.  Ohio's U.C.C. statute states that an invoice from a seller "may limit or alter the measure of damages recoverable ... as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts."

R.C.§ 1302.93(A)(1)(codifying UCC § 2–719). In *Goddard v. General Motors Corp.*, 60 Ohio St.2d 41 (1979), the Ohio Supreme Court held that even in the consumer sale context, a seller may limit or restrict the remedies or damages a buyer may pursue.  Thus, the types of damages that may be recovered or the timing of a claim for damages does not materially alter the parties' contract.

Plaintiff has failed to meet its burden to show any term materially alters the contract.  As set forth above, a seller's terms for 18% interest, attorney's fees and limitations on recovery have all been found to be valid contract terms that do not materially alter the contract.  Finally, the Court should note that there is also nothing in the Plaintiff's Purchase orders that contradicts Jest's terms.  As a matter of law, Jest's Motion for Summary Judgment should be granted. *Elgin Steel; Rocheux Intern; Goddard.*

C.     PAYMENT DUE BEFORE SHIPMENT

Plaintiff is all over the map on the payment terms.  Was it 50% deposit / 50% on shipment?  Was it 10% deposit / 90% on shipment?  Was it 50% deposit / 50% when order is within 4 days of port?  Plaintiff cannot even explain what it thought the terms were.  Regardless of what Plaintiff argues now, the sales terms were all C.I.F. The law is that C.I.F. sales require full payment upon delivery to the docks in China for shipment. *Thames & Mersey Marine Ins. Co. v. U.S.*, 237 U.S. 19 (1915); *Warner Bros. & Co. v. Israel*, 101 F.2d 59 (1939).   That is the law and it is not subject to debate. *Id.*  As the United Supreme Court held:

> The requirements of exportation are reflected in the familiar 'C. I. F'. contract (that is, at a price to cover cost, insurance, and freight), **which has 'its recognized legal incidents, one of which is that the shipper fulfills his obligation when he has put the cargo on board**…

*Thames & Mersey Marine Ins. Co. v. U.S.*, 237 U.S. 19 (1915); *See Warner Bros. & Co. v.*

5

*Israel*, 101 F.2d 59 (1939).  Delivery is not required to entitle the seller to full payment.

> In order **to become entitled to payment of the purchase price under the ordinary c. i. f. contract, of course, such delivery of the goods would not be a condition precedent to be performed at the risk of the seller**. Nor is it made so merely because the obligation to contract for the carriage is expressed in the form of delivery of the goods at a designated place

*Warner Bros.* The shipper, Jest, fulfills its obligation once the product is delivered to the shipping vessel in China.  Delivery is not a condition of payment.  *Id.*

Plaintiff' own P.O. terms are C.I.F. requiring full payment upon delivery to the docks in China.  Moreover, Plaintiff acknowledged its obligation to pay in full upon shipment. **In July 2018, Plaintiff stated that Jest will "<u>Receive money only when containers hit the water</u> and then 75% will be paid as we have already paid 25%."** *See* Jest's BIO Exhibits "2" and Exhibit "7.'  Again, Jest disputes this random 25% deposit / 75% on shipment split in the email, but the allocations are ultimately irrelevant.  The key is that Plaintiff admits Jest was to be paid in full (25% + 75% = 100%) when the shipments hit the water in China.  Plaintiff knew full payment was required no later than shipping from China (i.e. hitting the water), but Plaintiff never timely or fully paid Jest. *Id.*

Plaintiff repeatedly breached and never paid the full amount before shipping. In direct conflict with the law, the C.I.F. terms and Plaintiff's aforementioned admissions, Plaintiff refused to pay Jest at all.  In September 2018, Plaintiff clearly admits breaching the parties' agreement (contradicting its own former admissions) stating, "<u>**no more money until I get those 9 containers**</u>."

6

> Subject: Re: URGENT - these 5 containers are in port and OPI has not paid us
> From: Dan Reaser <danreaser@gmail.com>
> To: Kerry Forsdahl <sales@jesttex.com>
> Cc: James Levis <jim@cpawebline.com>
> Date Sent: Fri, 28 Sep 2018 13:29:26 -0400
> Date Received: Fri, 28 Sep 2018 10:29:30 -0700 (PDT)
>
> #1 I told you there would be no more money until i get those 9 containers.

*See* Jest BIO Exhibits "3" and "7." Plaintiff clearly breached the parties' contract. This email is direct evidence that Plaintiff was refusing to pay anything. Plaintiff never paid when the product was delivered to the docks in China. Plaintiff never paid when the product was shipped from China. Plaintiff never paid when the product hit the water. Plaintiff never paid when the product was 4 days from the U.S. port. Plaintiff never paid when the product was in the U.S. Plaintiff did not pay - stating "no more money until I get those 9 containers." Jest's Motion for Summary Judgment should be granted.

> D. PLAINTIFF KNEW WHEN THE GOODS SHIPPED AND RECEIVED THE BILLS OF LADING

In an effort to manufacture some defense, Plaintiff unbelievably claims that it did not know when the goods shipped from China and it never received bills of lading. *See* Plaintiff's BIO, pgs. 10-11. That is an outright fabrication. *See* Emails between Plaintiff and Jest attached hereto as Exhibits "1" and "2." Plaintiff was provided with all the sail dates, updated on all sailings and received the bills of lading. In fact, Plaintiff was provided with a full schedule of ship dates, containers and arrival dates.

7

| | A | B | C | D | E | F |
|---|---|---|---|---|---|---|
| 1 | | | | | | |
| 2 | Sail Date | | Qty | Item | Ctr# | ETA |
| 3 | 8/27 | NF | 1786 | R200 | #40 | 9/9 |
| 4 | 8/27 | NB | 1548 | R200 | #42 | 9/9 |
| 5 | 8/27 | NB | 2056/360 | R75/R150RT | #61.1 | 9/9 |
| 6 | 8/29 | NF | 2169 | R50 | #53 | 9/16 |
| 7 | 8/29 | NF | 896 | R200 | " | " |
| 8 | 8/30 | NF | 1772 | R200 / Boxes | #43 | 9/14 |
| 9 | 8/30 | NF | 1786 | R200 | #49 | 9/14 |
| 10 | 8/30 | NF | 4400 | R50 | #57 | 9/14 |
| 11 | 9/3 | NB | 1548 | R200 | #58 | 9/16 |
| 12 | 9/3 | NB | 1548 | R200 | #44 | 9/16 |
| 13 | 9/3 | LP | 4000 | R50 | #54 | 9/16 |
| 14 | 9/3 | LP | 4400 | R50 | #55 | 9/16 |
| 15 | 9/5 | NF | 1786 | R200 | #45 | 9/23 |
| 16 | 9/5 | NF | 600/3000 | R200/R50 | #46 | 9/23 |
| 17 | 9/9 | NB | 1828/490 | R75/R150 RT | #66 | 10/4 CLE |
| 18 | 9/9 | NB | 1000/400 | R300/R200 | #67 | 10/4 CLE |
| 19 | 9/10 | NB | 1548 | R200 | #47 | 9/23 |
| 20 | 9/10 | NF | 3248 | R50 | #62 | 9/23 |
| 21 | 9/10 | LP | 3400 | R50 | #63 | 9/23 |
| 22 | 9/10 | NF | 1786 | R200 | #48 | 9/23 |
| 23 | 9/10 | NF | 1786 | R200 | #56 | 9/23 |
| 24 | 9/10 | NF | 1786 | R200 | #59 | 9/23 |
| 25 | 9/17 | NF | 1786 | R200 | #60 | 9/30 |
| 26 | 9/17 | NF | 1786 | R200 | #64 | 9/30 |
| 27 | 9/17 | NF | 1786 | R200 | #65 | 9/30 |

*See* Exhibit "1", p. 4. Plaintiff knew when each order was loaded and shipped. Sadly, Plaintiff is simply misrepresenting the facts to the Court. Plaintiff also received the bills of lading[1] releasing the goods to it for all orders it paid for. *See* Exhibit "2" series of deliveries of bills of lading. Plaintiff never timely or fully paid for the hunting blinds despite actual knowledge of each shipment date and receipt of the bills of lading. Jest is entitled to summary judgment in its favor for $1,952,478.03, plus interest, costs and attorneys' fees.

    E.    <u>PLAINTIFF NEVER CANCELLED THE ORDERS</u>

Plaintiff takes the galling position that the orders should have been cancelled if duty was owed. Three problems with this position: Plaintiff never cancelled the orders, Plaintiff actually has all the product and Plaintiff ordered it C.I.F., which requires it to pay duty.

Kerry Forsdahl, owner of Jest, testified about this very issue in her deposition:

---

[1] In the emails and correspondence, Bill of Lading is often referred to as "BOL."

8

> Q. And is it your testimony that you explained that to Dan?
> A. When I, we specifically had the conversation when I told him about paying the duty invoices quickly and that's when him and I had the discussion that I explained my prices do not include duty and that was obviously an issue for him and he wanted us to absorb it and I said well, I can't absorb it and he said well, I'm going to cancel the order and I said well, then cancel the order. I don't know what to tell you.
> Q. Okay. And the order obviously wasn't cancelled?
> A. Right, because Dan came back and said we found out how these things are brought in. This is the code you need to use. It's for backpack tents and this is duty free and I said well, you know, again I said I know this is not the right code for these.

Jest instructed Plaintiff to cancel the orders, but Plaintiff never did. Additionally, as set forth above, Plaintiff already has all the product, "I agree that there is no undelivered product to the best of my knowledge…." *See* Depo Levis, p. 56-8. Again, a buyer cannot accept the goods, but refuse to pay for them. *Marley Cooling Tower Co. v. Caldwell Energy and Environmental, Inc.*, 280 F.Supp.2d 651; 51 UCC Rep.Serv.2d 376. The "buyer must pay at the contract rate for any goods accepted." R.C. 1302.

Finally, as set forth in Jest's Motion's when a buyer orders goods C.I.F., the buyer is responsible for all duty, taxes and import charges. *Continental Ore Corp. v. U. S.*, 191 Ct.Cl. 100 (1970); 423 F.2d 1248, 7 UCC Rep.Serv. 440; *See Also Mexican Produce Co. v. Sea-Land Service, Inc.*, 429 F.Supp. 552 (1974); *Gradmann & Holler v. Continental Lines S.A.*, 504 F. Supp. 785 (1980); Revised American Foreign Trade Definitions (1941); Commercial Law, 2nd Ed. (Oxford Press 2016) p. 547-548; The Law as to C.I.F. Contracts, H. Goitein, (Yale Law 1924); C.I.F. CONTRACTS IN INTERNATIONAL COMMERCE, 53 Harv. L. Rev. 792.

9

Buyer's remorse is not a defense.  The Ohio Supreme Court held that it is not the responsibility or function of the courts to rewrite a parties' contract in order to provide for a more equitable result. *Aultman Hosp. Assn. v. Community Mut. Ins. Co*. (1989), 46 Ohio St.3d 51, 54-55.  As the U.S. Supreme Court held nearly 150 years ago:

> It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, **or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written. But such is not the law. A contractor must stand by the words of his contract;** and, if he will not read what he signs, he alone is responsible for his omission.

*Upton v. Tribilcock*, 91 U.S. 45 (1875); *See Preferred Capital, Inc. v. Power Eng. Group, Inc*., 112 Ohio St.3d 429, 2007-Ohio-257, 860 N.E.2d 741, ¶ 10.  The Ohio Supreme Court has long recognized that "where a contract is plain and unambiguous, it does not become ambiguous by reason of the fact that in its operation it will work a hardship upon one of the parties thereto and a corresponding advantage to the other, [and] that it is not the province of courts to relieve parties of improvident contracts." *Ohio Crane Co. v. Hicks* (1924), 110 Ohio St. 168, 172, 143 N.E. 388.  Furthermore, the "…courts are powerless to save a competent person from the effects of his own voluntary agreement." *Ullmann v. May* (1947), 147 Ohio St. 468, 476, 34 O.O. 384, 72 N.E.2d 63.  Where sophisticated parties enter into a commercial contract from equal bargaining positions and the contract authorizes a result the courts are bound to enforce it. *Joseph J. Freed v. Cassinelli* (1986), 23 Ohio St.3d 94.   The same holds true here.  The C.I.F. designation is on the Plaintiff's own purchase orders and that requires the buyer to pay duty. *See* MSJ Exhibit "2."  A party is bound by the terms of its contract. *Upton; Preferred Capital, Inc.; Ullman; Joseph J. Freed.*  In this case, Plaintiff is liable to Jest for $488,622.66[2] relating to duty charges.  Plaintiff's arguments are legally and factually unsupported and Jest's Motion should be

10

granted.

### F. PLAINTIFF'S FLAWED MATH

Plaintiff repeatedly argues that it is not possible that Jest is owed money because it paid $5,705,527.31 and ordered $5,653,934.82 of product. Plaintiff ignores duty charges, extra freight charges, storage and VAT charges to make this argument.

Additionally, Plaintiff conveniently fails to inform the Court that **it never paid $584,000 until 2019** (months after all the product had been delivered and nearly 6 months after its lawsuit had been filed). Those late payments were after Jest had incurred storage charges, duty, extra freight and additional damages. Finally, during the project, but before the lawsuit, hundreds of thousands of dollars paid by Plaintiff were payments for duty and extra freight. Thus, the payments made by Plaintiff did not get applied solely to product. Thus, there still remains unpaid product and Jest is still owed payment. As set forth in all the prior briefing, Jest is owed:

| | |
|---|---|
| Product | $154,829.95; |
| Storage and extra freight | $363,485.22; |
| Duty charges | $488,622.26; |
| VAT taxes | $472,770.10; and |
| VAT penalty | $472,770.10 |
| | $1,952,478.03 |

Jest's Motion for summary judgment should be granted awarding Jest $1,952,478.03, plus 18% interest, costs and attorneys' fees per the contract.

---

[2] This sum is as of September 23, 2019, but interest and penalties continue to accrue.

G.  EXTRA FREIGHT

Legally, the term "freight" in a C.I.F. contract refers to maritime "freight" of ocean shipping on a vessel. *Matter of Commonwealth Oil Refining Co., Inc.*, 734 F.2d 1079 (1984). Freight, in C.I.F. does not include ground transport. *See* Jest BIO, Exhibit "1." Once the goods get to the U.S., the buyer must receive the goods upon arrival, handle and pay for all subsequent movements of the goods, including taking delivery. *Continental Ore Corp. v. U. S.*, 191 Ct.Cl. 100 (1970); 423 F.2d 1248, 7 UCC Rep.Serv. 440; *See Also* Revised American Foreign Trade Definitions (1941); Commercial Law, 2nd Ed. (Oxford Press 2016) p. 547-548; *Mexican Produce Co. v. Sea-Land Service, Inc.*, 429 F.Supp. 552 (1974); *Gradmann & Holler v. Continental Lines S.A.*, 504 F. Supp. 785 (1980); The Law as to C.I.F. Contracts, H. Goitein, (Yale Law 1924). During the job Plaintiff opted to do the shipping itself within the U.S. via trucking and demanded a credit from Jest (which it gave) for the rail shipping. *See* Jest BIO, Exhibit "1."

Plaintiff believed it could save money and ship internally within the U.S. more effectively by doing it itself. So, Plaintiff asked Jest to terminate (shipping ends) all shipments in Long Beach, California, not Cleveland, Ohio. *See* Affidavit of Maryann Vinci attached to BIO as Exhibit "1."

**Subject**: Shipping
**From**: Mick Maynard <mick@opioutdoors.com>
**To**: Kerry Forsdahl <sales@jesttex.com>
**Cc**: Danny Reaser <danny@opioutdoors.com>, Dan Reaser <danreaser@gmail.com>
**Date Sent**: Wed, 23 May 2018 11:15:43 -0400
**Date Received**: Wed, 23 May 2018 08:15:46 -0700 (PDT)

---

Kerry,

Could you please confirm that containers 2-9 are being terminated at Long Beach?

Thank You
Mick Maynard
Outdoor Product Innovations
888-507-2021
mick@opioutdoors.com

12

Plaintiff entered into its own independent trucking contract with Amware for internal U.S. shipping. *See* Jest BIO, Exhibits "4" and "5." Plaintiff attempted to handle its own logistics and shipping within the U.S., but had disastrous results. *See* Jest BIO, Exhibits "1" and "5." As a result of Plaintiff's inability to handle the truck shipping on its own, it fired Amware, asked Jest to perform the trucking and Plaintiff agreed to pay for trucking freight. *See* Exhibit "1."

> forwarder to truck it  8:03 PM
>
> 8:06 PM  3 day transit $6600, 5 day transit $5600.
>
> What happened to 4100 plus transload minus train900  8:07 PM
>
> 8:08 PM  That was what she got back then. Apparently there were DOT inspections all last week and now rates are thru the roof this week due to increased demand.
>
> Prices I gave include transload.
>
> 8:09 PM  So if you take off $900 for train it will be $5700 or $4700
>
> When do you think they would leave California?  8:11 PM

*See* Text attached to Jest BIO as Exhibit "6." Plaintiff knew it was paying for trucking acknowledging the costs as $4,100 per load, plus transload, minus the $900 for the train. *Id.* Jest explained that the cost to Plaintiff would be $4700-$5700. No different than Plaintiff's direct contract with Amware for trucking, which Plaintiff was paying for, it agreed to pay Jest this add on to do the shipping via truck. *Id.* Plaintiff also then wanted Jest to arrange for "trucking all

13

containers from LA." *See* MSJ Exhibit "7." Jest credited Plaintiff for the rail charges[3] and Plaintiff agreed to pay the trucking. *See* BIO Exhibits "6" and "7." There is no question that Plaintiff is liable for the trucking freight costs as it promised to pay for it. *See* Text attached to Jest BIO as Exhibit "6." If as Plaintiff argues, Jest agreed to pay the trucking cost, then why was Jest crediting the rail shipments at all – it would have been a flat price. As set forth herein, Jest's Motion for Summary Judgment should be granted.

H. VALUE ADDED TAX

Jest is entitled to the benefit of the bargain - to be placed in as good a position as it would have been in had the contract been fully performed by Plaintiff. *Rasnick v. Tubbs*, 126 Ohio App.3d 431, 435, 437 (1998); *Nobs Chemical, U.S.A., Inc. v. Koppers Co., Inc*., 616 F.2d 212 (1980); *Wells Fargo Bank, N.A. v. U.S.,* 88 F.3d 1012, 1021 (1996); Restatement of the Law 2d, Contracts (1981) 102–103, § 344. Similarly, Jest is entitled to recover all "incidental damages" as a result of a breaching buyer like Plaintiff, including all expenses, charges or damages "otherwise resulting from the breach." R.C. 1302.84. But for Plaintiff's non-payment, there would be no VAT damages.

Plaintiff argues that Jest cannot recover damages relating to VAT because it lacks standing. Plaintiff's argument is simply inaccurate. Jest is not claiming the Chinese government assessed it with VAT; Jest is claiming that its manufacturers and suppliers are requiring Jest to pay them for the VAT caused by Plaintiff's non-payment. *See* Affidavit Graves attached to MSJ as Exhibit "19." The reference to this component of damages as VAT is simply to explain where this part of Jest's damages arises from in this matter. If Plaintiff had timely and fully paid Jest, the VAT rebate would not have been lost. However, Plaintiff never timely or fully paid Jest

---

[3] On Jest's invoices, the Court will often note $900 credits starting in June/July 2018. Those are the

causing these damages. Jest is liable to its manufactures and suppliers to pay them for these charges. *See* Graves Affidavit. In order to place Jest in as good of a position as if Plaintiff had fully performed, Jest is legally entitled to recover these VAT damages from Plaintiff in the amount of $945,540.20. *See* MSJ Exhibit "20." *Rasnick; Nobs; Wells Fargo Bank.* Jest's Motion for Summary Judgment should be granted.

### I. PLAINTIFF WAIVED ANY LOST SALES AND PROFITS

Jest is the sole inured party in this case and Plaintiff is asserting no damages. Plaintiff waived and released any and all claims for lost sales or lost profits. *See* Stipulation attached to Jest's MSJ as Exhibit "25." Plaintiff entered into a formal stipulation waiving and releasing any and all claims for lost sales and lost profits. Thus, Plaintiff's references to alleged late deliveries by Jest as some excuse for non-payment are a nullity. Any issue relating to lost sales due to the timing of delivery or late delivery has been forever waived of record. Moreover, as set forth above, as a matter of law, the "buyer must pay at the contract rate for any goods accepted**.**" R.C. 1302.65 (emphasis added). A buyer cannot accept the goods but refuse to pay, as Plaintiff has done here. Jest is entitled to summary judgment in its favor and dismissal of all Plaintiff's claims.

### J. FRAUD BY PLAINTIFF

Plaintiff claims that Jest cannot recover for fraud because it is not a tort to breach a contract, but the U.C.C. **was not** enacted to eliminate all common-law causes of action other than a UCC cause of action. Principles of law and equity, including common-law fraud, supplement the provisions of the UCC governing transactions in goods "[u]nless displaced by…particular provisions of [the UCC]…" R.C. 1301.03. No provisions of the UCC have

---

credits for train transport. *See* MSJ Exhibit "4."

displaced actions for fraud. *See, generally*, 1 White & Summers, Uniform Commercial Code (3 Ed.1988) 19–20. In fact, unlike the exclusive remedy provisions of the old Uniform Sales Code, *see Saberton v. Greenwald* (1946), 146 Ohio St. 414, the UCC provides that remedies for fraud include those remedies available under the UCC sales provisions without making them exclusive. R.C. 1302.95. Accordingly, the courts hold that a cause of action for fraud is maintainable in addition to a UCC cause of action. *Ohio Sav. Bank v. H.L. Vokes Co.,* 54 Ohio App.3d 68 (1989). Fraud claims and remedies co-exist in U.C.C. sales like the case at bar.  R.C. 1302.95.

In this matter, even without a contract, there is a duty not to lie or misrepresent facts. In this matter, even without a contract, there is duty not to take property without payment. In this matter, even without a contract, there is duty to pay for goods and services provided.  Plaintiff's lies and misrepresentations about a third-party bank refusing to release money, or monetary restrictions placed upon it, which induced Jest to keep delivering products is actionable fraud as it is collateral to the contract.  The obligation to pay existed under the contract, but the lies for the reason for non-payment to induce further shipments are distinct, collateral and extraneous. Finally, as set forth in Jest's Motion for Summary Judgment any damages not recoverable for breach of contract may be recovered under its fraud count.  Thus, the fraud claims co-exist.  Jest is not seeking double recovery for the same damages twice.  Jest is only seeking recovery for any damages not covered by breach of contract (if any), plus punitive/special damages, which are not normally recoverable for breach of contract.

III.   CONCLUSION

For the foregoing reasons, Jest's Motion for Summary Judgment should be granted, and Defendant's Motion for Summary Judgment denied.

Respectfully submitted,

/s Michael R. Stavnicky
(Reg. No. 0063726)
Singerman, Mills, Desberg & Kauntz Co., L.P.A.
3333 Richmond Road, #370
Beachwood, Ohio 44122
mstavnicky@smdklaw.com
(216) 292-5807
Attorneys for Defendant/Counterclaimant
Jest Textiles, Inc.

CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(d) and 5(e), I hereby certify that on this 30th day of December 2019, a copy of the foregoing was delivered by email, regular U.S. Mail or via the Court's Electronic Filing System, where applicable, to all parties.

/s/ Michael R. Stavnicky