UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| OUTDOOR PRODUCT INNOVATIONS, INC., | ) | CASE NO. 1:18-CV-2457 |
| | ) | |
| | ) | JUDGE PATRICIA A. GAUGHAN |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM IN SUPPORT OF** |
| v. | ) | **PLAINTIFF OUTDOOR PRODUCT** |
| | ) | **INNOVATIONS, INC.'S MOTION FOR** |
| JEST TEXTILES, INC., | ) | **SANCTIONS** |
| | ) | |
| Defendant. | ) | |

## I. INTRODUCTION

Defendant Jest Textiles, Inc.'s ("Jest") discovery misconduct here is especially egregious. For one, it blatantly violated this Court's Order that it produce documents related to its Chinese vendors. Order at 2 (ECF No. 96). By doing so, it left Plaintiff Outdoor Product Innovations, Inc. ("OPI") in the lurch. Because these Chinese vendors are all located out of the country, OPI could not simply serve a Rule 45 subpoena on them to produce relevant documents. Instead, OPI had to rely on Jest to produce these documents. In violation of this Court's Order, which required Jest to produce all documents related to its Chinese vendors, Jest did not produce ***at least*** hundreds of pages of relevant documents. As a result, the Court should sanction Jest under Rule 37.

OPI respectfully requests that this Court sanction Jest by issuing an Order (1) striking Counts I (breach of contract) and II (action on account) of Jest's Counterclaim, Fed. R. Civ. P. 37(b)(2)(A)(iii); (2) instructing the jury that Jest did not timely deliver the hunting blinds, or, alternatively, that even if the parties' contract contained a 50% deposit term (which it does not), Jest suffered no damages, Fed. R. Civ. P. 37(b)(2)(A)(i); (3) prohibiting Jest from introducing any evidence that it timely delivered the hunting blinds and/or prohibiting Jest from introducing any evidence that it sustained any damages because of OPI's alleged failure to comply with the

alleged 50% deposit term, Fed. R. Civ. P. 37(b)(2)(A)(ii); and/or (4) prohibiting Jest from calling any witnesses to testify at trial as a sanction for their failure to turn over emails and social media posts which either of them sent or received, as disclosed herein.

These sanctions are appropriate because the documents Jest failed to produce in discovery are directly relevant to the parties' competing breach of contract claims and refute key elements of Jest's claims and defenses. In bad faith, Jest intentionally withheld relevant documents from its Chinese vendors and discouraged them from communicating with OPI. Jest has maintained throughout the litigation that OPI's failure to comply with an alleged 50% deposit term in the contract caused the delay in shipping the hunting blinds. *See, e.g.*, Def.'s Br. Opp. Pl.'s Mot. Summ. J. at 29 (ECF No. 112) ("Jest could not print the fabric in December 2017 because Plaintiff had not paid the money required."). But the documents OPI recently uncovered, which should have been produced months ago, reveal the opposite conclusion. Jest never paid a deposit to the Chinese fabric supplier, (Ex. A, Declaration of Quanming Lin ("Quanming Decl.") ¶ 8), and only paid one deposit of around $50,000[1] to Cixi Beisen Tourist Products Co. Ltd. ("North Forest"), the Chinese manufacturer of two-thirds of the hunting blinds. *See* (Ex. C, Declaration of Lin Yujiang ("Lin Decl.") ¶ 20); *see also* (Ex. D, Forsdahl 1/4/2018 email to Alison (NF000027)).

What's more, Jest repeatedly argued that because OPI did not issue final purchase orders until May 2018 "it would have been obvious that the dates were not guaranteed." Mem. Op. & Order at 6 (ECF No. 124); *see* (Forsdahl Dep. I at 40-41; 44). But, again in documents that

---

[1] Jest paid Lin's company, North Forest, a deposit of RMB 315,000. Lin Decl. ¶ 20. During 2018, the exchange rate between the U.S. dollar and the Chinese yen ("RMB") was moving favorably for the US Dollar and at that date was RMB 6.30 to $1.00 which would be $50,079. *See* https://www.poundsterlinglive.com/bank-of-england-spot/historical-spot-exchange-rates/usd/USD-to-CNY-2018. OPI advanced Jest $50,000 as a deposit around that date. *See* (Ex. B, Forsdahl 5/22/2018 email to Levis).

should have been disclosed by Jest months ago, Jest was telling its Chinese vendors in March 2018 that they needed to meet a "delivery schedule" (Ex. E, Forsdahl 3/10/2018 email to Alison *et al.* (NF000009)), was issuing purchase orders in late 2017 and early 2018 to its Chinese vendors with April 2018, May 2018, June 2018 shipping dates (Ex. F, Jest Purchase Contract Nos. 4518, 4521 & 4526 (NF000002-NF000004)), and was saying that it needed to ship the blinds in April, June, and July 2018 (Ex. G, Fabric schedule (NF000030)). Thus, contrary to the sworn testimony of its president and to the arguments its counsel made in summary judgment briefing, Jest knew ***as early as December 2017*** that OPI required delivery by summer 2018.

These are relevant, material documents that should have been produced, at a minimum, after this Court issued an Order requiring Jest to produce "documents related to Chinese vendors used by defendant in the course of the production of the hunting blinds at issue." Order at 2 (ECF No. 96). Jest intentionally violated this Order. It should be sanctioned accordingly.

## II. STATEMENT OF FACTS

### A. The Court orders Jest to produce documents related to its Chinese manufacturers and vendors.

OPI contracted with Jest to produce hunting blinds for OPI for the 2018 hunting season. In turn, Jest contracted with several Chinese manufacturers and vendors to produce to blinds in China. *See* Mem. Op. & Order at 2 (ECF No. 124). OPI and Jest began discussions about this 2018 order in late 2017. *See, e.g.*, OPI MSJ at 4 (ECF No. 110-1) (citing Forsdahl Dep. I at 95 and Reaser Dep. at 52:13-53:15). Ultimately, in May 2018, OPI issued 17 purchase orders (the "May 17th Purchase Orders"), which were accepted by Jest when it issued corresponding proforma invoices. *See* Mem. Op. & Order at 4 (ECF No. 124). The May 17th Purchase Orders superseded all preceding purchase orders, and all had required delivery dates, which OPI contends Jest breached. *See* OPI MSJ at Ex. D (May 17th Purchase Orders) (ECF No. 110-5).

3

Multiple times during discovery, OPI requested that Jest produce documents and communications related to Jest's Chinese manufacturers and vendors. These documents, OPI explained, "are relevant to Jest's VAT claims, to Jest's claim that OPI failed to make deposits timely and thereby delayed production and delivery." OPI Reply in Supp. Mot. to Compel at 6 (ECF No. 93). Jest resisted this production, claiming that these documents were both irrelevant and "involve[] Jest's proprietary, confidential trade secrets." Jest Opp. Mot. to Compel at 6 (ECF No. 92). The Court agreed with OPI. *See* Order at 2 (ECF No. 96).

The Court found "that documents related to Chinese vendors used by defendant in the course of the production of the hunting blinds at issue in this case are relevant and must be produced." *Id.* The Court further found that these documents were relevant to both OPI's claims and Jest's claims. *Id.* The Court then warned Jest that "[g]iven the discovery difficulties in this case, the Court further cautions defendant that the Court will likely preclude any party from introducing at trial or at the summary judgment stage, any documentary evidence not turned over in discovery. Nor would the Court be inclined to allow testimony from witnesses that is based on documents that were not disclosed." *Id.*

**B.     Jest fails to comply with the Court's Order.**

In response to the Court's October 3rd Order, Jest produced a smattering of documents, but few directly related to its Chinese vendors.

Left in the dark as to the existence of these documents, OPI completed its discovery depositions. In late October 2019, OPI took Doug Graves's deposition. (Graves Dep.) (ECF No. 108-1). Graves, as the Court will recall, operated Jest's China office. (*Id.* at 22:15-16). Then, in early November 2019, and again without documents the Court ordered produced, OPI completed Kerry Forsdahl's deposition. (Forsdahl Dep. II) (ECF No. 107-1).

4

The parties then proceeded to brief dispositive motions, without the benefit of being able to include and address the Chinese documents that were ordered to be produced. The Court recently issued its summary judgment decision, granting in part and denying in part both parties' competing motions for summary judgment.

In 2020, after dispositive motions were fully briefed, OPI was finally able to contact several of Jest's former Chinese manufacturers and asked whether they would voluntarily produce documents related to their 2018 contracts with Jest. Several did so.

All told OPI received nearly two hundred pages of documents that Jest did not produce to OPI. OPI received documents from Cixi Beisen Tourist Products Co. Ltd. ("North Forest") and Come Leisure Product Co. Ltd. ("Come Leisure"). *See* (Ex. H, North Forest production (NF000001-NF000152)); (Ex. I, Come Leisure production (CL000001-CL00014)). North Forest and Come Leisure manufactured the blinds in China. In addition, OPI received documents from the companies the supplied the fabric, SuZhou TuRui Textile Co., Ltd. ("TuRui") and Wujiang Linyi Weaving Factory ("Linyi"). *See* (Ex. J, TuRui & Linyi production) (L&T00001-6).

To be clear, OPI does not believe that these documents represent all the relevant Chinese documents that the Court ordered Jest to produce. Nor does its recent luck in obtaining these documents excuse the blatant non-compliance by Jest

These document productions reveal the Jest failed to comply with the Court's discovery order and with Jest's obligation to produce relevant documents in discovery. These productions include Jest purchase orders, emails between Jest's officers, Kerry Forsdahl and Doug Graves, and the Chinese manufacturers, and include social media messages (on WeChat) between them as well. These documents (most especially the emails) were almost assuredly in Jest's possession—yet they were withheld from OPI during discovery. Jest should be sanctioned.

As discussed more below, these documents were relevant and material, Jest's failure to produce them prejudiced OPI, and Jest acted in bad faith by refusing to produce them. OPI thus respectfully asks the Court to strike Jest's Counterclaim or alternatively, issue orders directing that certain matters be taken as established in OPI's favor at trial.

## III. ARGUMENT

### A. Legal standard for failing to comply with the Court's discovery order.

Federal Rule of Civil Procedure 37(b)(2) provides that "[i]f a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders . . . [including] dismissing the action or proceeding in whole or in part." Furthermore, the Court has inherent authority to sanction a party, which authority "derives from its power to impose respect in its presence, control the litigants before it, and guarantee the integrity of the courts." *Bradley J. Delp Revocable Tr. v. MSJMR 2008 Irrevocable Tr.*, 665 F. App'x 514, 520 (6th Cir. 2016) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44 (1991)).

Whether under Rule 37(b) or the Court's inherent authority, the factors a district court considers when imposing a particularly severe sanction are the same. *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1094 n.1 (6th Cir. 1994). The Court must consider (1) whether a party's failure to cooperate with discovery is the result of willfulness, bad faith, or fault; (2) whether the other side was prejudiced by the conduct; (3) whether the disobedient party was warned of the potential sanctions; and (4) whether less drastic sanctions were considered or imposed. *Universal Health Grp. v. Allstate Ins. Co.*, 703 F.3d 953, 956 (6th Cir. 2013). Although no one factor is dispositive, where the conduct amounts to bad faith, the importance of the other three factors fades. *Knoll v. Am. Tel. & Tel. Co.*, 176 F.3d 359, 366 (6th Cir. 1999).

This Court has discretion to impose discovery sanctions under Rule 37. *See Fencorp v. Ohio Ky. Oil Corp.*, 675 F.3d 933, 942 (6th Cir. 2012).

## B. Jest acted in bad faith

To determine "whether the party's failure [to comply with a discovery order] is due to willfulness, bad faith, or fault," the Court must find "a clear record of delay or contumacious conduct." *Barron v. Univ. of Mich.*, 613 F. App'x 480, 484 (6th Cir. 2015). This means conduct that is "perverse in resisting authority and stubbornly disobedient." *Id.* (cleaned up). The party's "conduct must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of his conduct on those proceedings." *Id.* (cleaned up). A party's failure to respond to discovery requests and to a district court's order compelling production constitutes "contumacious conduct." *Id.*

Jest engaged in contumacious conduct and acted in bad faith. It refused to produce documents related to its Chinese manufacturers and vendors, hiding behind a baseless trade secrets claim. *See* Jest Br. Opp. Mot. to Compel at 6 (ECF No. 92). And, in violation of this Court's Order, Jest refused to produce documents related to its Chinese vendors and manufacturer. OPI only learned of this misconduct when those vendors voluntarily produced documents to OPI.

What's more, while OPI now has these documents, OPI did not have them when deposing Jest's officers and when briefing dispositive motions. And these newly discovered documents lay bare that the narratives that Jest spun during depositions and dispositive briefing were false, as discussed below. Even worse, though, OPI believes these new documents just scratch the surface of what Jest wrongfully withheld in discovery.

Jest acted in bad faith.

7

### C.  OPI was prejudiced by Jest's discovery abuses.

Jest violated this Court's Order. It failed to produce documents related to its Chinese vendors. These documents include emails, purchase orders, and social media messages that are, as this Court held, "relevant and must be produced." Order at 2 (ECF No. 96).

OPI was prejudiced by Jest's misconduct. For purposes of Rule 37, a litigant is prejudiced by an opposing party's "dilatory conduct" if the litigant must "waste time, money, and effort in pursuit of cooperation which [the opposing party] was legally obligated to provide." *Carpenter v. City of Flint*, 723 F.3d 700, 707 (6th Cir. 2013) (quoting *Harmon v. CSX Transp.*, 110 F.3d 364, 368 (6th Cir. 1997)); *see also Brown v. Tellermate Holdings Ltd.*, No. 2:11-cv-1122, 2015 U.S. Dist. LEXIS 105263, at *24 (S.D. Ohio Aug. 11, 2015). A party is likewise prejudiced when its opponent fails to produce documents that "could have assisted in [its] case by undermining [its opponent's] claim." *Barron v. Univ. of Mich.*, 613 F. App'x 480, 485 (6th Cir. 2015). OPI, through both its counsel and its corporate officers, have spent untold hours and effort to contact Jest's Chinese vendors to uncover these relevant, material documents.

Indeed, Jest's discovery misconduct is especially egregious. It withheld documents that OPI could not, by legal process, compel the production of.

What's more, the documents that Jest failed to produce are relevant and material to this litigation and if available for dispositive motions, may have changed the Court's rulings.

For one, Jest's president, Kerry Forsdahl, claimed during her deposition that "things were being slowed down because money wasn't being provided." (Forsdahl Dep. I at 40:24-41:1). And she said that the delivery dates in the May 17th Purchase Orders were merely aspirational: "So these were the dates they wanted but I never promised or guaranteed these dates. I mean to hand me a purchase order on May 17th asking for July 1st delivery date when there's a 20-week

lead time. Would you accept that?" *Id.* at 41:2-6; *see also id.* at 44:17-23 ("The delivery dates were inconsequential at that point.").

The documents recently produced by North Forest and Come Leisure reveal that the delays Jest experienced were because Jest could not print and deliver fabric fast enough, *see* (Ex. K, Alison 4/12/2018 email to Forsdahl (NF000013)), and that Jest told its Chinese manufacturers (in both emails and in purchase orders) in early 2018 that OPI required the blinds to be shipped by early summer, *see* (Ex. F, Jest Purchase Contract No. 4518 (NF000002)); (Ex. G, Fabric schedule (NF000030)).

And Jest knew in early 2018 that the hunting blinds needed to be delivered in summer 2018 so that they could be on the shelf for hunting season in the fall. We know this ***now*** because in early 2018, Jest provided North Forest with shipping dates for when the hunting blinds needed to be shipped. For example, in January 2018, Jest issued Purchase Order No. 4518, which provided a June 2018 shipping date for nearly 100,000 blinds. (Ex. F, Jest Purchase Contract No. 4518 (NF000002)); *see also* (Ex. G, Fabric schedule (NF000030)) (providing that Jest needed to ship the blinds in April, June, and July 2018). These documents refute Jest's suggestion that OPI sprung delivery dates that were impossible to achieve in the May 17th Purchase Orders. Instead, Jest knew full well in early 2018 that OPI required delivery of the hunting blinds in summer 2018 so that the blinds could be on the shelf for hunting season in the fall.

As the Court knows, Jest breach of contract claim is based principally on its allegation that OPI breached the parties' contract by failing to comply with an alleged 50% deposit term in the contract. *See* Jest MSJ at 4 (ECF No. 104). OPI has denied that any such 50% deposit was ever agreed upon. Jest claims that it was damaged by this alleged failure—even though OPI has since paid Jest a little over $5.7 million, which is more than the price set forth in the parties'

contract, the May 17th Purchase Orders—because "things were being slowed down because money wasn't being provided" and that it was "impossible" to have "every blind produced and ready by September 20th" due to the "all of the difficulties we got, we had in trying to get paid all along with the deposit that never came." (Forsdahl Dep. I at 43:5-11). This was not true.

Likewise, Jest represented to OPI that it required deposits to pay its Chinese vendors. (Ex. L, Forsdahl 1/3/2018 email to Reaser). But, based on these newly discovered documents, we know that Jest did not need advance deposits—let alone a 50% deposit. For example, after telling OPI that Jest needed a series of 20% deposits for the blind factory (*id.* (Forsdahl writing that a "20% deposit to blind factory" is required)), the very next day Jest refused to pay North Forest— the manufacturer that produced two-thirds of the blinds—a 20% deposit. (Ex. D, Forsdahl 1/4/2018 email to Alison (NF000027)) ("As a very small portion of the order is due by the end of May, I am sure you can understand that we would not be willing to send 20% deposit on the entire order."). As this Court will recall, by June 2018, OPI had paid Jest $1.4 million in advance deposits. In contrast, Jest paid North Forest a one-time $50,000 deposit. *See* Lin Decl. ¶ 20; (Ex. H, North Forest production at NF000033 (payment schedule)).

Nor did Jest send any deposits to the textile factories, Turui and Linyi. (Ex., Declaration of Quanming Lin ("Quanming Decl.") ¶ 8). But Jest told OPI that it sent hundreds of thousands of dollars to the textile factories. (Ex. B, Forsdahl 5/22/2018 email to Levis). This begs the question of just what Jest did with OPI's deposits if Jest was not paying its Chinese vendors.

And the delays in producing the hunting blinds had nothing to do with money either; instead, the delays were caused by Jest's management failures including not making timely deliveries of printed fabric to North Forest to manufacture the hunting blinds. *See* Lin Decl. ¶11; (Ex. H, North Forest production at (NF000011-NF000013)). The textile factory owner also

10

confirmed that money had no impact on the provision of fabric or the work by his factories. He suggested the problems were due to Jest never supplying his factories with an order plan. *See* Quanming Decl. ¶ 5.

Because Jest failed to produce these documents, OPI was prejudiced. With these documents in hand, OPI could have impeached Forsdahl at her deposition or Doug Graves at his deposition. With these documents in hand, OPI could have argued during dispositive briefing that even assuming there was a 50% deposit term, Jest suffered no damages because any delays were caused by Jest's failure to deliver fabric timely and, regardless, any money issues were because Jest ordered the blinds at a higher cost than it sold them to OPI. And, with these documents in hand, OPI could have additionally argued that its alleged failure to comply with the 50% deposit was not a material breach of the contract.

OPI was prejudiced.

### D. Jest was warned that sanctions could result.

The third factor courts consider when imposing sanctions under Rule 37 is whether the party was warned that its conduct could result in sanctions. But the Sixth Circuit "has explained that where a plaintiff has not been given notice that dismissal is contemplated, 'a district court should impose a penalty short of dismissal ***unless*** the derelict party has engaged in bad faith or contumacious conduct.'" *Harmon v. CSX Transp.*, 110 F.3d 364, 367 (6th Cir. 1997) (emphasis added) (quoting *Harris v. Callwood*, 844 F.2d 1254, 1256 (6th Cir. 1988)).

Here, the Court warned Jest that "[g]iven the discovery difficulties in this case, the Court further cautions defendant that the Court will likely preclude any party from introducing at trial or at the summary judgment stage, any documentary evidence not turned over in discovery. Nor would the Court be inclined to allow testimony from witnesses that is based on documents that

were not disclosed." Order at 2 (ECF No. 96). Thus, the Court warned Jest that it could be sanctioned for refusing to produce documents. Although the Court did not warn Jest that its claims could be struck if it failed to comply with the Order, the Court can still impose this sanction because Jest "engaged in bad faith [and] contumacious conduct." *Harmon*, 110 F.3d at 367; *see also Brown v. Tellermate Holdings Ltd.*, No. 2:11-cv-1122, 2015 U.S. Dist. LEXIS 105263, at *27 (S.D. Ohio Aug. 11, 2015) ("even absent the finding of bad faith, no one factor under the Rule 37(b) sanctions analysis is dispositive and prior warning is not indispensable to the imposition of such sanctions") (cleaned up).

Here, this Court specifically warned Jest that the Court would not be inclined to allow testimony from witnesses on documents that were not disclosed. At a minimum, both Kerry Forsdahl and Doug Graves should be precluded from providing any testimony at trial given that Jest refused to produce the emails and social media posts which OPI has obtained through North Forest and Come Leisure.

### E. The Court should consider lesser sanctions but find that they are not warranted.

The fourth factor this Court must consider in assessing sanctions under Rule 37 is "whether less drastic sanctions were imposed or considered before dismissal was ordered." *Barron v. Univ. of Mich.*, 613 F. App'x 480, 484 (6th Cir. 2015). Although the Court has not previously sanctioned Jest, the Court should nevertheless strike Jest's Counterclaim or, alternatively, issue some other significant sanction.

Here, a significant sanction, including an Order striking Jest's Counterclaim, is warranted. Consider, for months, Jest withheld documents directly relevant to the parties' claims and defenses, knowing full well that OPI could not simply compel production from third parties.

{01425337-3}

Jest hid documents that were damaging to it and that OPI could have used in deposition practice or in summary judgment briefing.

True, the Court did warn Jest that if it failed to produce documents, the Court would likely exclude those documents at trial. *See* Order at 2 (ECF No. 96). But this sanction does OPI little good. ***These documents help OPI***. Instead, the Court should consider the appropriate sanction that both punishes Jest for its willful violation of the Court's Order and deters future parties from similarly abusing the discovery processes of the Court. As discussed below, OPI submits that the appropriate sanction is an Order striking Jest's Counterclaim.

F. **Significant sanctions are warranted.**

"In selecting a sanction under Rule 37, a court may properly consider both punishment and deterrence." *Bratka v. Anheuser-Busch Co.*, 164 F.R.D. 448, 459 (S.D. Ohio 1995) (citing *Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 643 (1976)). Rule 37(b) sets forth a panoply of sanctions for a party's violation of a discovery order. Among these sanctions is an Order "striking pleadings in whole or in part." Fed. R. Civ. P. 37(b)(2)(A)(iii). This is appropriate here.

Jest withheld relevant documents to OPI for months and did so knowing that it would impact depositions and dispositive motions to be filed. It violated this Court's Order that it produce documents related to its Chinese vendors. And the documents that it withheld prejudiced OPI.

OPI spent countless hours reviewing the documents that were produced, preparing for lengthy depositions, and briefing dispositive motions without material documents that Jest should have produced. As noted, the Court may consider both punishment and deterrence when assessing what sanction under Rule 37 to impose. For example, in *Bratka*, the district court

reasoned: "If litigants are to have any faith in the discovery process, they must know that parties cannot fail to produce highly relevant documents within their possession with impunity. Parties cannot be permitted to jeopardize the integrity of the discovery process by engaging in halfhearted and ineffective efforts to identify and produce relevant documents." *Bratka v. Anheuser-Busch Co.*, 164 F.R.D. 448, 463 (S.D. Ohio 1995). Thus, "a default judgment on the issue of liability would not only serve the purposes of punishment and deterrence but it would also have a direct relationship to the specific evidence which defendant failed to produce, namely evidence relevant to the issues of defendant's fault and the proximate cause of plaintiff's injury." *Id.* The same is true here.

Jest failed to produce evidence highly relevant to the parties' dispute. It did so in violation of the Court's Order. An Order striking Jest's Counterclaim would, as in *Bratka*, "not only serve the purposes of punishment and deterrence but it would also have a direct relationship to the specific evidence which defendant failed to produce." *Id.*

Alternatively, if the Court views an Order striking Jest's Counterclaim as inappropriate, the Court requests the Court impose several evidentiary sanctions. The Federal Rules authorize a district court to sanction a disobedient party by "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims," Fed. R. Civ. P. 37(b)(2)(A)(i), and by "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence," Fed. R. Civ. P. 37(b)(2)(A)(ii).

OPI urges the Court, in the event it does not strike Jest's Counterclaim, to sanction Jest by instructing the jury to find certain facts in OPI's favor or alternatively to prohibit Jest from introducing certain evidence. Specifically, OPI requests that the Court instruct the jury to find (1)

that Jest failed to deliver timely the hunting blinds and (2) that Jest did not suffer any damages because of OPI's alleged failure to pay a 50% deposit. Alternatively, OPI requests that the Court prohibit Jest from introducing any evidence at trial that it (1) timely delivered the hunting blinds and (2) suffered any damages because OPI did not pay a 50% deposit. Given the documents Jest withheld, these sanctions would likely serve the purposes of both punishment and deterrence. Lastly, this Court should issue an order excluding Jest from calling both Kerry Forsdahl and Doug Graves as witnesses at trial given that each of them had significant communications with the Chinese manufacturers and both failed to turn over and produce highly relevant documentations. One can only wonder about what else they have failed to produce.

In addition, OPI requests that the Court require Jest and its counsel "to pay the reasonable expenses, including attorney's fees," caused by Jest's failure to comply with the Court's discovery order. Fed. R. Civ. P. 37(b)(2)(C). The Federal Rules mandate that "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure . . . ." *Id.*

Lastly, OPI requests that the Court enjoin Jest and Doug Graves from coercing or threatening (1) any of the Chinese vendors that have produced documents to OPI; (2) those vendors that have not yet produced documents to OPI; and (3) any other third parties with discoverable information. *See* Lin Decl. ¶ 25 (declaring that "Jest threatened North Forest" if "North Forest provided any information to [OPI]").

## IV. CONCLUSION

For the reasons set forth above, the Court should sanction Jest for its discovery misconduct.

{01425337-3}

Dated: March 27, 2020

Respectfully submitted,

/s/ *Nicholas R. Oleski*
David M. Cuppage (0047104)
E. Roger Stewart (0069042)
Nicholas R. Oleski (0095808)
McCarthy, Lebit, Crystal
 & Liffman Co., LPA
101 West Prospect Avenue
1800 Midland Building
Cleveland, Ohio 44115
Telephone:  (216) 696-1422
Facsimile:  (216) 696-1210
Email:  dmc@mccarthylebit.com
  ers@mccarthylebit.com
  nro@mccarthylebit.com

*Attorneys for Plaintiff Outdoor Product Innovations, Inc.*

16